In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1623

ELISA S. GALLO, M.D.,

*Plaintiff-Appellant,*

*v.*

MAYO CLINIC HEALTH SYSTEM-
FRANCISCAN MEDICAL CENTER, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 15 C 304 — **James D. Peterson,** *Chief Judge.*

ARGUED APRIL 20, 2018 — DECIDED NOVEMBER 1, 2018

Before SYKES, and BARRETT, *Circuit Judges,* and DURKIN, *District Judge.**

DURKIN, *District Judge.* Elisa Gallo was a dermatologist at the Mayo Clinic. Less than a year into her employment, she resigned and entered into a separation agreement to prevent the Mayo Clinic from saying anything negative about her to

---

* The Honorable Thomas M. Durkin, Northern District of Illinois, sitting by designation.

prospective employers. Years later, her former supervisor rated her performance as "fair" on two criteria in a credentialing form. Gallo then sued the Mayo Clinic for breach of the separation agreement. The district court granted the Mayo Clinic's motion for summary judgment. Gallo appeals that order. We affirm.

## I.  Background

Gallo began working as a dermatologist at the Mayo Clinic in February 2010. In September 2010, she started having performance issues and conflicts with her supervisor, Dr. Michael White. The Mayo Clinic contends that White outlined corrective steps for Gallo to take to continue her employment, but that Gallo refused to take those steps, causing the Mayo Clinic to place her on unpaid leave. No matter the circumstances, Gallo soon hired an attorney, resigned, and entered into a separation agreement with the Mayo Clinic. The separation agreement was intended to prevent the Mayo Clinic from saying anything negative about Gallo in response to employment inquiries. Specifically, the separation agreement stated:

> The parties have agreed upon a letter of reference for Employee to be provided to potential employers seeking a reference. The letter of reference is attached hereto as Exhibit A and incorporated herein… . Employer will state nothing that will be inconsistent with the letter of reference (Exhibit A) attached hereto. No reference will be made to any performance issue and nothing derogatory will be stated.

In June 2013, Dr. Mark Lebwohl, a dermatologist at Mount Sinai Hospital in New York, recommended that Gallo apply

to a position at Refuah Health Center (also in New York), which had a relationship with Mount Sinai. Refuah extended an offer to Gallo in August 2013. The proposed employment relationship was to be between Gallo and Refuah only, and not with Mount Sinai.

From August to September 2013, Gallo negotiated various terms of her employment contract with Dr. Corinna Manini at Refuah. During negotiations, Manini wrote an email to one of her colleagues stating, "I can't stand Gallo." Refuah rescinded its offer a few days later on September 18, 2013. About a month later, Gallo wrote to Manini and explained that she did not understand the negotiating process and that she would accept whatever Refuah had to offer. Between mid-October to December 2013, Gallo and Manini discussed the prospect of Refuah hiring Gallo for a part-time position at Refuah. In December 2013, Refuah extended an offer to Gallo for that position.

Because Refuah physicians supervise Mount Sinai residents, Gallo had to be credentialed by Mount Sinai to work at Refuah. Credentialing grants a physician privileges at a hospital to perform specific procedures there. Doctors do not have to be employed by a hospital to be credentialed at that hospital. As part of the credentialing process, Mount Sinai sent an Affiliation Verification form (the "credentialing form") to the Mayo Clinic. In-house counsel at the Mayo Clinic sent the form to White to complete. The form asked White to rate Gallo from "poor" to "superior" in 13 categories. White completed the form after seeking advice from in-house counsel and approval from another doctor. For 11 out of the 13 categories, White rated Gallo "superior" or "good." White rated Gallo "fair" on two categories: accepting feedback and

ability to work with others. After discovering that his ratings might hurt Gallo's credentialing chances, White sent an email to Lebwohl recommending Gallo, but saying that he was not willing to artificially inflate the evaluation. White also spoke with the director of credentialing at Mount Sinai and told her that Gallo was a good physician and that he did not want to hurt Gallo's credentialing prospects.

Because Gallo was not yet licensed to practice medicine in New York, she did not sign the December 2013 offer. After Gallo received her license to practice in New York in April 2014, Refuah sent Gallo an employment agreement for contingent part-time employment at Refuah. Gallo then began further negotiation of the terms of her employment. On April 30, 2014, Manini wrote to Lebwohl that "Gallo is driving us nuts." On May 6, 2014, Gallo wrote an email raising 18 additional issues concerning her employment contract. Another Refuah employee asked Manini "Is this provider that amazing?," to which Manini responded, "I'm happy to rescind the offer." Manini also told Lebwohl that Gallo was being "very unreasonable" and "questioned whether Gallo was the right person for the job." Refuah rescinded its offer to Gallo and filled the position with another individual.

After Mount Sinai received the credentialing form from the Mayo Clinic, the credentialing process required Lebwohl, as department head, to recommend Gallo for approval to the credentialing committee. But Lebwohl never made any recommendation to approve Gallo for credentialing because he was aware that no job was available to her at Refuah. As a result, Gallo was neither approved for nor denied credentialing by Mount Sinai. Nonetheless, on May 15, 2014, Lebwohl emailed Gallo stating: "Dear Elisa, Your application was not

adequate for credentialing by the Mount Sinai credentialing committee and Refuah is therefore not waiting to offer you the job. Sorry to deliver this news. I'd be happy to discuss with you as I'm sure you'll be applying for other positions."

Gallo sued the Mayo Clinic for breaching the separation agreement. The Mayo Clinic moved for summary judgment. The district court concluded as a matter of law that 1) the separation agreement did not apply because the credentialing form was not an employment reference and 2) the credentialing form was not the reason Refuah declined to hire Gallo. Gallo filed a motion to alter or amend the judgment, which the district court denied. Gallo now appeals the district court's summary judgment decision.

## II.  Analysis

### A.  Motion to Supplement the Record

Preliminarily, the Court addresses Gallo's motion to supplement the record on appeal. Gallo seeks to add to the appellate record eight documents produced during discovery but never presented to the district court. We instructed Gallo to present her motion to the district court in the first instance as required by Federal Rule of Appellate Procedure 10(e) and Circuit Rule 10(b). The district court denied Gallo's request because none of the documents she sought to add were presented to it during the case proceedings. This Court then held it would review her motion with this appeal.

Federal Rule of Appellate Procedure 10(e) permits a party to supplement the appellate record "[i]f anything material to either party is omitted from or misstated in the record by error or accident." "This rule is meant to ensure that the record reflects what really happened in the district court, but not to

enable the losing party to add new material to the record in order to collaterally attack the trial court's judgment." *United States v. Banks*, 405 F.3d 559, 567 (7th Cir. 2005).

None of the documents Gallo seeks to add to the record are relevant to this appeal. Gallo's proposed documents are (1) six documents containing employment records containing general praise of Gallo by third parties (A21 to A27, A30 to A31); (2) one document consisting of Exhibit A to the separation agreement (A28), which reflected the agreed form for what the Mayo Clinic could say to Gallo's prospective employers; and (3) one document containing an email from Refuah confirming that Refuah was no longer considering Gallo for the part-time dermatologist position (A29). The evidence of third-party praise for Gallo is entirely irrelevant to this appeal regarding an alleged breach of contract. The exhibit to the agreement is likewise irrelevant because, as explained below, Gallo has failed to refute the Mayo Clinic's significant evidence that Refuah denied her employment for reasons unrelated to the credentialing form. There is no dispute that White did not follow the agreed upon reference form when he filled out Mount Sinai's request. The exact content of the agreed form is thus unnecessary to this decision. Finally, the email is an unnecessary hearsay version of an email already in the record. For those reasons, Gallo's motion to supplement the record is denied.

The Mayo Clinic seeks costs and attorney's fees incurred in responding to the motion and requests that the Court strike references to the documents and argument based on those documents. Gallo has known that the form letter (as an exhibit to the separation agreement) was excluded from the record for some time. Indeed, in its summary judgment opinion, the

district court stated that neither side had put the form letter into the record. Gallo also made no effort to put the letter into the record in her motion to alter or amend the judgment. Gallo's late attempt to add it to the appellate record now, along with irrelevant documents boasting of her credentials and a redundant email, is meritless. The Mayo Clinic's motion is granted.

### B. Summary Judgment[1]

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in Gallo's favor. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To prevail on her breach of contract claim under Wisconsin law, Gallo needed to establish (1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach. *See Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d

---

[1] Gallo has waived any arguments regarding her tortious interference claim and her breach of contract claims based on derogatory or disparaging statements or based on the verbal employment reference language in the separation agreement, because she failed to address them before the district court. *See United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010) (issue waived when not presented to the district court on summary judgment); *Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir. 1997) ("[I]t is axiomatic that arguments not raised below are waived on appeal.").

547, 553 (7th Cir. 2008). The district court found that the Mayo Clinic's return of the credentialing form to Mount Sinai was not a breach of the separation agreement because the agreement only applied to prospective employers seeking a reference, and Mount Sinai was not a prospective employer. The district court also held that Gallo could not show damages resulting from anything the Mayo Clinic did—there was no evidence to indicate that the two "fair" ratings prevented Gallo from getting hired. The court further noted that the Mayo Clinic had shown sufficient evidence that Refuah had other reasons to not hire Gallo, including that it had other personnel available and that Gallo had been difficult to deal with. For those reasons, the court held that Gallo's breach of contract claim failed.

Reviewing the record de novo, the Court agrees that Gallo's breach of contract claim fails. The evidence shows that the separation agreement did not apply to Mount Sinai's credentialing form request. The separation agreement is unambiguous. It states: "The parties have agreed upon a letter of reference for Employee to be provided to potential employers seeking a reference." This provision thus applies only to 1) potential employers 2) seeking a reference.

It is undisputed that Mount Sinai was not a "potential employer seeking a reference." In the parties' proposed findings of fact, Gallo admitted that she had no employment opportunity with any entity other than Refuah:

> **Proposed Finding of Fact 122.** MSH [Mount Sinai] had never offered Dr. Gallo an employment position at any MSH entity and had not promised Dr. Gallo any future position at any MSH entity.

> **ANSWER:** Plaintiff admits Fact 122.
>
> **Proposed Finding of Fact 141.** Dr. Lebwohl, at no point, promised Dr. Gallo employment at MSH.
>
> **ANSWER:** Plaintiff admits Fact 141.
>
> **Proposed Finding of Fact 142.** The employment relationship was to be between Dr. Gallo and [Refuah] and not Dr. Gallo and MSH.
>
> **ANSWER:** Plaintiff admits Fact 142.

Gallo nonetheless argues that the parties intended the separation agreement to broadly apply to all potential employers. She says Mount Sinai was a *potential* employer, even if it was not Gallo's imminent *prospective* employer. But the separation agreement does not apply to every potential employer. Such an interpretation would include every medical institution that might hire Gallo at any time in the future. The separation agreement instead limits itself to a potential employer *seeking a reference*. The limitless scope suggested by Gallo does not comport with the present facts and is inconsistent with her admissions. Those facts and admissions make clear that there was to be no employment relationship between Gallo and Mount Sinai. Only Refuah was potentially hiring Gallo. Further, the credentialing form was not a reference request. Mount Sinai sent the credentialing form only for purposes of determining whether Gallo could have privileges to perform procedures at Mount Sinai in order to supervise residents— not to hire Gallo. For these reasons, the Court declines to broadly read the contract to interpret the credentialing form as a "reference" request from a potential employer.

Regardless, even if the separation agreement did apply to
Mount Sinai's request, Gallo cannot prove causation. Ma-
nini's declaration, which Gallo failed to refute,[2] is dispositive.
In that declaration, Manini made clear that Refuah's decision
to not hire Gallo was

> [N]ot based, in any way, on any credentialing
> decision by any other party; rather, the decision
> was based upon the combination of Dr. Gallo's
> continued efforts to re-negotiate her employ-
> ment contract, her demand to make changes to
> the contract that were unacceptable to [Refuah]
> and the ability to fulfill [Refuah's] staffing needs
> with a dermatologist who was already provid-
> ing dermatological services at [Refuah].

Manini's emails during the negotiation process support
her declaration. On several occasions, Manini noted she
"[couldn't] stand [G]allo" and that "Gallo [was] driving
[Refuah] nuts." In May 2014, after Gallo requested 18 changes
to the employment contract, Manini declared to another
Refuah employee: "I'm happy to rescind the offer." Lebwohl
corroborated Manini's declaration. In his deposition, he testi-
fied that Refuah decided not to hire Gallo because of her end-
less negotiating and Manini's dislike of Gallo. Lebwohl also
testified that Mount Sinai never completed the credentialing
process. He explained that there was no need to credential
Gallo "if the job was not there for her [at Refuah]."

Gallo points to emails from Lebwohl in an attempt to cre-
ate a disputed factual issue on causation. Lebwohl emailed

---

[2] Despite being given the opportunity to do so on several occasions,
Gallo's attorney never deposed Manini.

Gallo on May 15, 2014 and told her that her "application was not adequate for credentialing" by Mount Sinai and that "Refuah is therefore not waiting to offer you the job." He also sent Gallo an email stating, "[s]ome people don't realize the damage they do to others on a form they might think is unimportant." Any favorable inference from Lebwohl's emails is rebutted by his clear deposition testimony. Lebwohl testified that the fair ratings were not the reason for Mount Sinai's failure to credential Gallo. In fact, Lebwohl testified that Mount Sinai never investigated the fair ratings as part of the credentialing process. He explained that the credentialing committee had asked him to look into the "fair" ratings, but he chose not to do so because Gallo "was already having this difficulty with Manini and the negotiations and we[3] had somebody who was going to take the job."

Lebwohl also testified that he told Gallo about the fair ratings "in an attempt to help her so that she could find a job." He explained, "I told her about the fair ratings and that the credentials committee had raised an issue with that and really intending her to use this as advice going forward, if she's looking for a job, to try to make sure that whoever gave her

---

[3] Lebwohl's use of the word "we" would suggest that Mount Sinai was a potential employer. There is no evidence in the record that Lebwohl had any decision-making influence in hiring Gallo as an employee at Refuah. Instead, because the Refuah position involved supervising Mount Sinai residents, Mount Sinai was involved in finding and approving physicians for that supervision. In a letter sent by Lebwohl to White on November 24, 2014, he confirms that the position at Refuah was filled by a physician at Mount Sinai who had the capacity to take on the additional responsibilities. While the two institutions clearly had a relationship, Gallo fails to point to any evidence that indicates Mount Sinai would employ her.

those fair ratings not be the one she goes to for an evaluation." Even if Lebwohl's emails raise a contested factual issue as to the credentialing of Gallo, there is no indication anyone at Refuah even saw the credentialing form submitted by White. This fact conclusively refutes the tenuous connection Gallo tries to draw between the credentialing form and her failure to receive the job.

At bottom, the undisputed evidence indicates that Gallo was passed up by Refuah because of her over-demanding negotiations and the availability of another individual to take the position. Drawing all factual inferences in Gallo's favor, she has failed to show that the credentialing form—even if prohibited by the separation agreement—caused her any harm. Gallo's breach of contract claim fails.

### III. Conclusion

For these reasons, we AFFIRM the district court's decision.