### NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2019[*]
Decided February 12, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

| | |
|---|---|
| Nos. 17-1785 & 17-3365 | |
| CLIFFORD GIBBONS, | Appeals from the United States |
|     *Plaintiff-Appellant*, | District Court for the Northern |
|     *v.* | District of Illinois, Eastern District. |
| MONY LIFE INSURANCE | |
| COMPANY and DISABILITY | No. 1:15-cv-05352 |
| MANAGEMENT SERVICES, | |
| INC., | Matthew F. Kennelly, |
|     *Defendants-Appellees*. | *Judge*. |

### O R D E R

Clifford Gibbons, 68, owned a disability benefits insurance policy through MONY Life Insurance Company that terminated after he turned 65. Believing that a heart attack he suffered at 62 was an "injury" under the policy that entitled him to benefits for life (rather than a disqualifying "sickness"), he brought a diversity action against both MONY Life (for breach of contract) and the plan's administrator Disability Management

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Services (for intentional infliction of emotional distress). The district court ultimately rejected Gibbons's interpretation of his coverage and entered summary judgment on his contractual claims for the defendants. As for the remaining IIED claim, the parties appeared to reach a settlement, but Gibbons later refused to sign the agreement. He denied that any agreement had been reached and accused his attorney of settling the claim without his permission. After multiple hearings, the court enforced the settlement. Gibbons now appeals, but we affirm.

In 2013 Gibbons experienced a heart attack, caused by what he says was a period of high stress stemming from his work as a Washington lobbyist. He applied for and received benefits through his disability insurance policy. He later discovered, however, that because MONY Life categorized his heart attack as a sickness rather than an accidental injury, his benefits lasted only until he turned 65.

Attorney Joseph Pellis was hired by Gibbons and his wife Terry (both signed the attorney-client agreement as co-clients) to help them sue MONY Life over his coverage. Three counts of the complaint survived the pleadings stage: a breach-of-contract claim against MONY Life, an accompanying request that the court declare his heart attack an accidental injury, and an IIED claim against DMS.

Near the outset of discovery, Gibbons recognized that his breach-of-contract claims turned on whether his stress-induced heart attack could be characterized under the policy as a qualifying "injury," and not a sickness. Because of the potentially dispositive nature of this distinction, Gibbons moved for partial summary judgment to resolve this legal question as "a matter of law."

The district court denied the motion, ruling that Gibbons's disability was due to sickness. Even if his heart attack was stress-induced, the court explained, it could not be an injury under Illinois law because it was not caused by a sudden and discrete external force or event. If Gibbons was suffering from stress, he was sick, in ill health, or in a weakened condition.

The defendants had not cross-moved for summary judgment, however, so a month later they filed just such a motion on grounds that there was no disputed issue regarding the characterization of a stress-induced heart attack as an injury, and that they were entitled to judgment as a matter of law. Gibbons told the court that he would not contest the defendants' motion, which the court proceeded to grant.

The defendants offered to settle the remaining IIED claim for a lump sum and a general release—an offer that Pellis forwarded by email on January 15 both to Terry and Gibbons. On January 18, Pellis sent a follow-up email to Terry (with whom he regularly communicated about the case), asking whether she could confirm their acceptance of the offer. The next day Terry emailed Pellis their acceptance. She forwarded the offer and her correspondence with Pellis to Gibbons, who emailed Pellis later that night, saying, "[t]his settlement offer is all in your court at this stage."

Pellis communicated the acceptance of the offer in an email to the defendants on January 19, and the parties apprised the court of the agreement on January 30. But a week later, Gibbons denied ever intending to settle and accused Pellis of acting without permission. Pellis communicated Gibbons's position to the defendants, then moved to withdraw from representation; the defendants moved to enforce the agreement.

The district court then held a hearing on the motion to enforce. After listening to testimony from Gibbons and Pellis, the court enforced the settlement and dismissed the case. In the court's view, the email exchange between Pellis and defendants represented a "meeting of the minds" that an enforceable agreement had been created because Pellis had authority to speak for Gibbons as his attorney. Additionally, the court pointed to Gibbons's unexplained delay in contesting the settlement, despite knowing that the settlement had already been under review by the court for a week.

Gibbons, proceeding pro se, sought reconsideration of the enforcement of the settlement on grounds that he had not given Pellis express authority to accept the proposed settlement. The court construed this request under Federal Rule of Civil Procedure 60(b) and, after further briefing and another hearing, denied it. The court reiterated that Terry's January 19 emails to Pellis expressly authorized him to accept the settlement. The court also determined that Terry had apparent authority to authorize Pellis to accept the settlement on Gibbons's behalf: she, along with Gibbons, had signed the attorney-client engagement letter; Gibbons told Pellis that Terry should be a part of settlement agreement discussions; Gibbons did not object to her authority to act on his behalf in the past; Gibbons did not protest to Pellis copying Terry on all emails or communicating with her directly and at times exclusively; and Terry forwarded the emails agreeing to the settlement to Gibbons, the contents of which he did not protest.

On appeal, Gibbons first challenges the denial of his motion for partial summary judgment. He argues that the district court, in determining that his heart attack was not

an injury under Illinois law, improperly resolved a disputed medical question of fact. He further asserts that the court should have taken discovery on the issue.

Gibbons waived this argument when he staked out a position in the district court that directly contradicts it. In his summary judgment motion, he asserted that the question whether his stress-induced heart attack was a sickness or injury should be decided "as a matter of law," and he specifically requested a stay of discovery because none was needed to answer this legal question. Having taken this position in the district court—that the relevant question was purely legal and required no discovery—he may not now argue the converse. It is axiomatic that the failure to draw the district court's attention to an applicable theory waives pursuit of that theory on appeal. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016); *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965, n.1 (7th Cir. 2018). Gibbons makes no other arguments, nor will we construct any for him. *See Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016).

Gibbons next challenges the district court's grant of defendant's motion for summary judgment on grounds that he was not given proper notice or the ability to respond. This misstates the record. He *was* given notice and asked to respond; he chose not to. Defendants informed the parties and the court of their intention to move for summary judgment at the next status hearing, scheduled for October 2016. At the hearing, before granting defendants' motion, the court asked Gibbons whether he had any arguments to make in opposition. Gibbons replied no, telling the court, "we are not going to oppose this motion." Gibbons is bound by this concession; arguments not made in response to summary-judgment motions are waived. *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017); *Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016).

Gibbons also challenges the enforcement of the settlement agreement, arguing that his wife was not empowered to accept any agreement on his behalf. But the district appropriately found that Terry acted as Gibbons's apparent agent. Under Illinois law, "[w]here parties silently stand by and permit an agent to act in their behalf in dealing with another in a situation where the agent may be presumed to have authority, the parties are estopped from denying the agent's apparent authority as to third persons." *Mateyka v. Schroeder*, 504 N.E. 2d 1289, 1295 (Ill. App. Ct. 1987). As the court explained, there was ample evidence of an apparent agency relationship: Terry was a co-client in the attorney-client agreement; she frequently acted on Gibbons's behalf in this case, and regularly made decisions for them both; and Gibbons himself expressed that Terry should be involved in settlement negotiations.

Lastly, Gibbons generally challenges the district court's denial of his motion to reconsider the judgment. We review Rule 60(b) motions for abuse of discretion, and this review is very limited: we would disturb the denial only if no reasonable person could agree with the district court's decision. *Willis v. Lepine*, 687 F.3d 826, 833 (7th Cir. 2012). Gibbons's motion repeats the arguments we have already rejected, and provides no evidence of mistake or excusable neglect, no newly discovered evidence, and no fraud. The court did not abuse its discretion in denying the motion.

AFFIRMED