2022 IL App (1st) 210104-U

FOURTH DIVISION
March 31, 2022

No. 1-21-0104

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ELISA S. GALLO, M.D., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 L 12888 |
| | ) | |
| GEORGE BELLAS and LESTER PINES, | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the grant of summary judgment in favor of defendants in a legal malpractice action.

¶ 2    Plaintiff Elisa S. Gallo, M.D. filed a legal malpractice complaint in the circuit court of Cook County against her former attorneys, defendants George Bellas (Bellas) and Lester Pines (Pines).  She alleged that defendants' negligence resulted in the dismissal of her breach of contract action against her former employer.  On appeal, plaintiff contends that the circuit court erred in granting summary judgment in favor of defendants and in dismissing her legal malpractice complaint.  For the reasons discussed herein, we affirm.

¶ 3                                    BACKGROUND

¶ 4                        *Plaintiff Leaves Her Employment at Mayo*

¶ 5      Plaintiff is a board-certified physician, specializing in dermatology.  Commencing on February 1, 2010, she was employed as a dermatologist at the Mayo Clinic Health System – Franciscan Medical Center, Inc. (Mayo), located in La Crosse, Wisconsin.  Dr. Michael White (Dr. White), the chairman of the dermatology department at Mayo, was her direct supervisor.

¶ 6      In September 2010, Dr. White met with plaintiff to discuss certain performance issues. Plaintiff subsequent to the meeting decided to resign, and she retained Wisconsin attorney Dawn Harris (Harris) to represent her in reaching a settlement with Mayo.

¶ 7      Plaintiff and Mayo on September 30, 2010 entered into a separation agreement and general release (the separation agreement).  Section 1.B of the separation agreement provided that the parties agreed on a letter of reference for plaintiff to be provided to potential employers seeking a reference.  The letter was attached as an exhibit to the separation agreement.  Section 1.B further stated that any requests for a verbal reference were to be directed to Barbara Saathoff (Saathoff), Mayo's general counsel.  Section 14 of the separation agreement provided that both parties agreed not to make any slanderous, derogatory, or disparaging remarks about the other.

¶ 8                        *Plaintiff Pursues Employment at Refuah*

¶ 9      While attending a medical conference, plaintiff met Dr. Mark Lebwohl (Dr. Lebwohl), the chairman of the dermatology department at Mount Sinai Hospital (Mount Sinai) in New York City.  In June 2013, Dr. Lebwohl put plaintiff in touch with Dr. Corinna Manini (Dr. Manini), the medical director of Refuah Health Center, Inc. (Refuah), an outpatient facility in Spring Valley, New York, which had a relationship with Mount Sinai.

¶ 10     Following negotiations, Refuah extended an offer of part-time employment to plaintiff,

although she had not yet been licensed to practice medicine in New York. As further negotiations with plaintiff continued, Dr. Manini became frustrated with plaintiff. Her email to a colleague on September 11, 2013, had the subject line, "[I] can't stand Gallo." Dr. Manini rescinded the offer to plaintiff in September 2013. The following month plaintiff reached out to Dr. Manini regarding potential employment, and, after further discussions, Refuah extended another offer of part-time employment to plaintiff in December 2013.

¶ 11    On April 23, 2014, Refuah was notified that plaintiff was licensed to practice medicine in New York. Refuah then sent plaintiff a written employment agreement for part-time employment, which apparently led to additional negotiations. On April 30, 2014, Dr. Manini wrote to Dr. Lebwohl, "We really like Dr. Kim! Any chance she would stay for the long haul? Gallo is driving us nuts…" Dr. Manini was referring to Dr. Soo Jung Kim (Dr. Kim), a Mount Sinai dermatologist who periodically performed dermatological services at Refuah. After plaintiff sent an email on May 6, 2014, raising eighteen separate concerns about the employment contract, Dr. Manini wrote an internal email stating, "I'm happy to rescind the offer."

¶ 12    In the meantime, the credentialing process for plaintiff had commenced at Mount Sinai.[1] Since Refuah physicians supervise Mount Sinai residents working at Refuah, plaintiff was required to be credentialed at Mount Sinai, even though she was not employed by Mount Sinai. As part of this process, Mount Sinai submitted a two-page affiliation verification form to Mayo, requesting information regarding plaintiff's skills, qualifications, and performance. At the direction of Mayo's attorney Saathoff, Dr. White – the Mayo dermatology department chairman – completed and returned the form on or about April 28, 2014. Dr. White rated plaintiff as

---

[1] "Credentialing grants a physician privileges at a hospital to perform specific procedures there. Doctors do not have to be employed by a hospital to be credentialed at that hospital." *Gallo v. Mayo Clinic Health System-Franciscan Medical Center, Inc.*, 907 F.3d 961, 963 (7th Cir. 2018).

"superior" in six categories, including promotion of health and prevention of illness. He rated her as "good" in five categories, *e.g.*, clinical judgment. Dr. White rated her as "fair" in two categories: accepting feedback and cooperativeness. He did not rate plaintiff as "poor" in any category. Dr. White gave her an overall recommendation of "qualified and competent."

¶ 13    In May 2014, plaintiff was advised that the position at Refuah was no longer available.

¶ 14                    *Plaintiff Sues Mayo and Dr. White*

¶ 15    Represented by defendants – Bellas, an Illinois attorney, and Pines, a Wisconsin attorney – plaintiff filed a two-count complaint against Mayo and Dr. White in the United States District Court for the Western District of Wisconsin (3:15-cv-00304). In count I, she alleged that Mayo breached the separation agreement when Dr. White completed and sent the credentialing form to Mount Sinai. According to plaintiff, the use of the term "fair" in an evaluation of a physician's performance was a "code word" to warn medical institutions that a candidate for employment is sub-par. In count II, plaintiff alleged that Mayo and Dr. White tortiously interfered with what would have been her employment contract with Refuah; plaintiff did not pursue this claim and count II was ultimately dismissed.

¶ 16    During discovery, plaintiff's attorneys deposed Dr. Lebwohl from Mount Sinai. Dr. Lebwohl testified, in part, that he had called plaintiff during her negotiation process with Refuah to advise her that she was not negotiating effectively and that Dr. Manini viewed her as unreasonable. Dr. Manini had relayed to Dr. Lebwohl that she was having "second thoughts" regarding plaintiff. Dr. Lebwohl also described a telephone conversation he had with Dr. White from Mayo regarding the two "fair" ratings on the credentialing form. According to Dr. Lebwohl, Dr. White spoke positively regarding plaintiff and wanted her to secure the employment position. Dr. Lebwohl could not recall whether he had told Dr. Manini about the

"fair" ratings on the credentialing form.

¶ 17    On May 15, 2014, Dr. Lebwohl emailed plaintiff, stating in part: "Your application was not adequate for credentialing by the Mount Sinai credentialing committee and Refuah is therefore not waiting to offer you the job." During his deposition, however, Dr. Lebwohl testified that the protracted negotiations with Refuah prevented plaintiff from obtaining the position, not the "fair" ratings on the credentialing form. As the position at Refuah was no longer available, plaintiff's credentialing process at Mount Sinai was never completed.

¶ 18    Plaintiff's attorneys also deposed Stephan Flaim, the director of medical staff credentialing at Mount Sinai. He testified that Mount Sinai would expect the physician's former employer to complete and return the standard credentialing form; he did not recall instances where Mount Sinai accepted a document other than its standard credentialing form.

¶ 19    Mayo submitted a declaration from Dr. Manini dated July 11, 2016. She stated, that prior to May 15, 2014, Refuah decided to rescind its part-time contingent employment offer. Refuah had received no negative information regarding plaintiff from anyone employed at Mayo at that point. Dr. Manini represented that the decision to rescind was not based on any credentialing decision by any other party. She stated the decision was based on the combination of plaintiff's continued efforts to renegotiate her employment contract, her demand for changes which were unacceptable to Refuah, and the ability to fulfill Refuah's staffing needs with a dermatologist who was already providing dermatological services there (*i.e.*, Dr. Kim).

¶ 20    In September 2016, the parties to the federal litigation – plaintiff, Mayo, and Dr. White – and their respective attorneys participated in a mediation which resulted in a settlement in principle. After plaintiff refused to sign the written settlement agreement, Bellas and Pines sought and obtained leave from the district court to withdraw; plaintiff retained new counsel.

¶ 21    On January 24, 2017, the district court granted Mayo's motion for summary judgment and dismissed the case. *Gallo v. Mayo Clinic Health System – Franciscan Medical Center, Inc.*, 2017 WL 354291 (W.D. Wis. Jan. 24, 2017). On appeal, the United States Court of Appeals for the Seventh Circuit affirmed the district court's decision. *Gallo v. Mayo Clinic Health System – Franciscan Medical Center, Inc.*, 907 F.3d 961 (7th Cir. 2018). The Seventh Circuit concluded that (a) the undisputed evidence indicated that plaintiff was passed up by Refuah due to her over-demanding negotiations and the availability of another individual to take the position and (b) plaintiff failed to demonstrate that the credentialing form – even if prohibited by the separation agreement – caused her any harm. *Id.* at 967-68.

¶ 22                    *Plaintiff Sues Bellas and Pines*

¶ 23    In November 2018, plaintiff filed a single-count complaint for attorney malpractice in the circuit court of Cook County against three of her former attorneys: Harris, the attorney who represented her with respect to the separation agreement, and Bellas and Pines, who represented her in her lawsuit against Mayo and Dr. White. Harris filed a motion to quash service and dismiss pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2018)) for lack of personal jurisdiction. The circuit court granted Harris's motion to dismiss with prejudice, finding that all of the relevant conduct was based in Wisconsin.[2]

¶ 24    Plaintiff alleged, in part, that Bellas and Pines breached their duty of care by failing to take the depositions of Dr. Manini or Dr. Kim or to take other discovery which would have refuted the defense presented by Mayo that its breach of contract was not the cause of plaintiff's failure to secure the dermatologist position at Refuah. Plaintiff further alleged that defendants

---

[2] Plaintiff refiled her malpractice action against Harris in the United States District Court for the Western District of Wisconsin (3:19-cv-00591). In May 2020, the federal district court entered an order granting Harris's motion to dismiss.

attempted to coerce her into settling with Mayo to "hide" their negligence.

¶ 25    In their answers and affirmative defenses, defendants asserted that plaintiff's claim was barred by the applicable two-year statute of limitations (735 ILCS 5/13-214.3(b) (West 2018)), that she failed to mitigate her damages, that she contributed to her damages by failing to settle the underlying case, and that her claim was barred, in whole or in part, by collateral estoppel based on the findings and rulings of the federal district court and the Seventh Circuit.

¶ 26    Defendants each filed motions for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2018)), arguing that their negligence did not cause plaintiff to lose the underlying case. According to defendants, the district court entered summary judgment in the underlying case – and the Seventh Circuit affirmed – because the unambiguous separation agreement did not even apply to credentialing forms, much less prohibit Mayo from completing and returning the form sent by Mount Sinai. Defendants further contended that the undisputed facts demonstrated that the credentialing form had no role in Refuah's decision not to hire plaintiff. According to defendants, Refuah formed a negative impression of plaintiff as a result of her communications with Refuah staff members and her "unreasonable" demands to renegotiate the employment contract. Defendants thus asserted that the undisputed facts indicated that plaintiff lost the underlying case since she could not prove the required elements of a breach of contract claim, and not as a result of attorney negligence.

¶ 27    In a decision filed on January 29, 2021, the circuit court granted defendants' motions for summary judgment. The circuit court found that defendants established – and plaintiff failed to rebut – that no genuine issue of material fact exists that plaintiff failed to satisfy the "case within a case" requirement by failing to establish that attorney negligence by defendants caused plaintiff to lose the underlying federal case against Mayo. Plaintiff timely filed the instant appeal.

¶ 28                                    ANALYSIS

¶ 29                    *Illinois Supreme Court Rule 341 Violations*

¶ 30    Defendants initially contend that plaintiff's brief should be stricken and her appeal dismissed based on her non-compliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020), which governs the contents of appellate briefs. See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. As discussed below, while we have serious concerns regarding the contents and overall tenor of both the opening brief and reply brief filed by plaintiff through her counsel, we decline to dismiss the appeal.

¶ 31    The purpose of the rules of procedure regarding appellate briefs is to require parties to present clear and orderly arguments, supported by citations to the record and legal authority, so that the reviewing court can properly ascertain and dispose of the issues involved. *Id*; *Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392, ¶ 14. A brief that fails to conform substantially to the pertinent supreme court rules may justifiably be stricken. *Hall*, 2012 IL App (2d) 111151, ¶ 7; *Burrell*, 2017 IL App (1st) 163392, ¶ 14.

¶ 32    The opening brief herein violates Rule 341(h)(6), which requires that the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal[.]" Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The 35-page statement of facts in plaintiff's brief is replete with argument and commentary and is inconsistent in its references to the record. Although plaintiff's counsel attempts in the reply brief to minimize the extent and import of his violations of Rule 341(h)(6), the violations are neither trivial nor inconsequential. "The Illinois Supreme Court Rules are not suggestions; they have the force of law and must be complied with." *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America*, 2020 IL

App (2d) 190034, ¶ 28.

¶ 33    Plaintiff's brief also violates Rule 341(h)(7), which requires the argument to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."  Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).  The argument section of the opening brief does not cite any cases or statutes.  In the reply brief, plaintiff's counsel maintains that "[t]his is a fact case, not a law case," and "[p]laintiff did not believe it was necessary to provide this court with a string cite of cases as to what attorney negligence is."  Simply put, this position is flawed at best.  While a "string cite" may not be necessary, a reviewing court is entitled to have the issues defined clearly and supported by applicable authority and cohesive arguments; it is not merely a repository into which the appellant may dump the burden of research and argument.  *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009).  Accord *Hall*, 2012 IL App (2d) 111151, ¶ 12 (noting that mere contentions, without argument or citations to authority, do not merit consideration on review).

¶ 34    Despite all of the foregoing, we are able to glean the necessary facts from the record, and we thus elect to consider this appeal on the merits.  *E.g.*, *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 146 (2004).  See also *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098, ¶ 33 (noting that it is within the reviewing court's discretion whether to dismiss an appeal or strike a portion thereof based on violations of Rule 341).  We caution plaintiff's counsel to adhere to the requirements of the supreme court rules in future appeals.  See *id.*

¶ 35                    *Summary Judgment – Legal Malpractice*

¶ 36    On appeal, plaintiff contends that the circuit court erred in granting summary judgment in favor of defendants on her legal malpractice claim.  Defendants[3] challenge this contention.

---

[3] We granted defendant Bellas leave to adopt the appellee brief of defendant Pines.

¶ 37    "The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14.  Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2018).

¶ 38    In determining whether a genuine issue of material fact exists, a court must construe the admissions, pleadings, depositions, and affidavits strictly against the movant and liberally in favor of the opponent. *Lewis*, 2020 IL 124107, ¶ 15.  "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.*  Although it is a drastic means of disposing of litigation, summary judgment is appropriate if the plaintiff fails to establish any element of the cause of action. *Id.*  We review a summary judgment ruling *de novo*.

¶ 39    Plaintiff filed a legal malpractice claim against defendants.  The basis of a claim for legal malpractice is that, absent the former attorney's negligence, the plaintiff would have been compensated for an injury caused by a third party. *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 12.  To state a legal malpractice claim, the plaintiff must plead and prove that: (a) the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship; (b) the defendant breached that duty; and (c) as a direct and proximate result of the breach, the plaintiff suffered injury. *Id.*  Accord *In re Estate of Powell*, 2014 IL 115997, ¶ 13.

¶ 40    A legal malpractice action is – by its nature – dependent on a predicate lawsuit. *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 28.  When the alleged malpractice involves

litigation, no actionable claim exists unless the attorney's negligence resulted in the loss of an underlying cause of action. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). "If the underlying action never reached trial because of the attorney's negligence, the plaintiff is required to prove that but for the attorney's negligence, the plaintiff would have been successful in that underlying action." *Id*. A legal malpractice plaintiff must thus litigate a "case within a case." *Id*. For purposes of a legal malpractice action, a plaintiff is not considered to be injured unless he has suffered a loss for which he may seek monetary damages. *Stevens*, 2015 IL 118652, ¶ 12; *Estate of Powell*, 2014 IL 115997, ¶ 13. A plaintiff's damages in a legal malpractice action are limited to the actual amount he would have recovered if he had been successful in the underlying case. *Stevens*, 2015 IL 118652, ¶ 12.

¶ 41 Plaintiff contends that the defenses of Mayo and Dr. White in the underlying federal litigation went "almost totally unchallenged" by defendants because they: (a) failed to take certain discovery, including the deposition of Dr. Manini; (b) waived the argument that paragraph 14 of the separation agreement applies, *i.e.*, the mutual agreement not to make slanderous, derogatory, or disparaging remarks; and (c) failed to put into evidence the letter of reference (which was an exhibit to the settlement agreement). As discussed below, we reject plaintiff's arguments.

¶ 42 An attorney is liable to his client for damages in a malpractice action only where the attorney failed to exercise a reasonable degree of care and skill. *Barth v. Reagan*, 139 Ill. 2d 399, 406 (1990). In addition to proving there was an error in the legal representation, the plaintiff is required to prove that the error was negligent. *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 25. See also *Barth*, 139 Ill. 2d at 406-07 (noting that "[t]he law distinguishes between errors of negligence and those of mistaken judgment"). A plaintiff is not entitled to recover for

legal malpractice by merely demonstrating that it did not receive perfect representation. *Fox*, 2016 IL App (1st) 141984, ¶ 25. "Parties have legal recourse only upon proving that they did not receive representation commensurate with the skill and care ordinarily used by a reasonably well-qualified attorney under similar circumstances." *Id.*

¶ 43    To the extent that plaintiff herein contends that defendants' discovery efforts were deficient, the record indicates otherwise. Defendants appear to have engaged in extensive discovery to develop a factual basis for plaintiff's claims, including taking the depositions of Mount Sinai employees Dr. Lebwohl and Stephan Flaim and Mayo employees Dr. White and attorney Saathoff. As to the purported failure to take Dr. Manini's deposition, certain written documents produced by Refuah in discovery strongly suggest that any deposition would have been counterproductive, *e.g.*, her emails quite clearly expressed her displeasure and frustration with plaintiff. Any strategic decision to not depose Dr. Manini – even if misguided (which we do not believe it was) – would not rise to the level of negligence. See *Nelson*, 2013 IL App (1st) 123122, ¶ 31 (noting that the doctrine of "judgmental immunity" is consistent with Illinois legal malpractice law, which distinguishes between negligence and mere errors of judgment). While plaintiff is critical of her former counsel for failing to depose Dr. Manini, we note that her counsel in this legal malpractice action apparently did not depose Dr. Manini either.

¶ 44    Plaintiff also contends that defendants breached their duty of care by failing to include the form letter of reference and by failing to argue the applicability of section 14 of the separation agreement – the mutual non-disparagement clause – during the federal litigation. As to the letter of reference, the Seventh Circuit observed that there was no dispute that Dr. White did not follow the agreed-upon reference form when he filled out Mount Sinai's request. *Gallo*, 907 F.3d at 965. The exact contents of the letter were thus unnecessary for the court's decision.

*Id.* As to the purported "waiver" of any argument regarding section 14, the separation agreement was presented to the district court and to the Seventh Circuit, which characterized the agreement as "unambiguous." *Id.* at 966. The terms of an unambiguous integrated agreement generally cannot be contradicted by parol evidence of subjective intent. See, *e.g.*, *Eichengreen v. Rollins, Inc.*, 325 Ill. App. 3d 517, 521-22 (2001). In any event, the district court in the underlying litigation was presented with plaintiff's deposition transcript, wherein she testified about her subjective expectations regarding how the separation agreement was intended to work. Despite the foregoing, both the district court and Seventh Circuit found that the separation agreement did not apply to credentialing inquiries.

¶ 45 Even if defendants' negligence was established, "no action will lie against the attorney unless that negligence proximately caused actual damage to the plaintiff." *Estate of Powell*, 2014 IL 115997, ¶ 13. To satisfy the proximate cause element, a plaintiff must establish that "but for" the attorney's negligence, the plaintiff would not have suffered damages. *Id.* ¶ 24. In the instant case, such causation has not been established. The Seventh Circuit held that plaintiff failed to refute Mayo's "significant evidence that Refuah denied her employment for reasons unrelated to the credentialing form." *Gallo*, 907 F.3d at 965. In the instant legal malpractice action, there are no facts in evidence that suggest that any action by defendants in their representation of plaintiff in the federal litigation would have changed the Seventh Circuit's assessment. For example, even if Dr. Manini were deposed, plaintiff has provided no reason to believe that Dr. Manini's deposition testimony would have varied from her statements in her declaration submitted in the underlying action. *E.g.*, *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999) (noting that "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment").

¶ 46    For the reasons discussed above, we affirm the judgment of the circuit court granting summary judgment in favor of defendants on plaintiff's legal malpractice claim.  We therefore need not consider certain arguments raised by defendants, *e.g.*, whether plaintiff's failure to present expert testimony regarding the standard of care would be fatal to the cause of action. *Fox*, 2016 IL App (1st) 141984, ¶ 23.

¶ 47                                CONCLUSION

¶ 48    The judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 49    Affirmed.