# Illinois Official Reports

## Supreme Court

---

*Stevens v. McGuireWoods LLP*, 2015 IL 118652

---

Caption in Supreme Court:
JAMES R. STEVENS *et al*., Appellees, v. McGUIREWOODS LLP, Appellant.

Docket No.
118652

Filed
September 24, 2015

Rehearing denied
November 23, 2015

Decision Under Review
Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Margaret Ann Brennan, Judge, presiding.

Judgment
Appellate court judgment affirmed in part and reversed in part.
Circuit court judgment affirmed.

Counsel on Appeal
Frederick J. Sperling, David C. Giles, and Adam J. Diederich, of Schiff Hardin LLP, of Chicago, for appellant.

Daniel F. Konicek and Amir R. Tahmassebi, of Konicek & Dillon, P.C., of Geneva, and Ryan S. Zeller and Robert P. Cummins, of Chicago, for appellees.

| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
|---|---|
| | Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    The issue in this legal malpractice case is whether the circuit court of Cook County properly entered summary judgment in favor of defendant, McGuireWoods LLP. We hold that it did.

¶ 2                                    BACKGROUND

¶ 3    Plaintiffs are former minority shareholders in Beeland Management LLC (Beeland). In 2005, plaintiffs hired the law firm of McGuireWoods LLP (McGuireWoods) to bring certain claims against Beeland's managers, Tom Price and Alan Goodman, and against Beeland's owner and majority shareholder, Jim Rogers. The gist of these claims was that Rogers, Price, and Goodman had misappropriated Beeland's trademarks and other intellectual property, to the detriment of Beeland. Plaintiffs brought these claims both in their individual capacities and derivatively on behalf of Beeland. In August 2008, the trial court dismissed without prejudice all of the claims brought against Price and Goodman, as well as three of the nine counts brought against Rogers.

¶ 4    At this point, plaintiffs retained new counsel who sought and received leave to file an amended complaint. In addition to restating the original claims brought against Rogers, Price, and Goodman, the amended complaint added seven new counts against Beeland's corporate counsel, Sidley Austin LLP (Sidley). As with the original claims, plaintiffs brought the new claims against Sidley both in their individual capacities and derivatively on behalf of Beeland. In response, Sidley filed a motion to dismiss on the grounds that (1) all of the claims brought against it were untimely under the relevant statutes of limitations and repose (see 735 ILCS 5/13-214.3 (West 2010)); (2) several of the counts failed to state a claim upon which relief may be granted (see 735 ILCS 5/2-615 (West 2010)); and (3) plaintiffs lacked standing to sue Sidley in their individual capacities because, as Beeland's corporate counsel, Sidley's duty ran solely to the corporation and not to its individual shareholders. The trial court granted Sidley's motion. In doing so, the trial court dismissed with prejudice all of plaintiffs' claims against Sidley on the grounds that those claims were untimely under section 13-214.3. In addition, the trial court dismissed with prejudice all of plaintiffs' individual claims against Sidley on the grounds plaintiffs lacked standing to sue Sidley in their individual capacities. Finally, the trial court dismissed all but one of plaintiffs' claims against Sidley under section 2-615 for failing to state a claim upon which relief can be granted.

¶ 5    Four months later, in July 2011, plaintiffs settled with Rogers and the underlying case was dismissed in its entirety and with prejudice. In addition, plaintiffs relinquished all of their ownership interest in Beeland.

¶ 6        Shortly thereafter, in October 2011, plaintiffs filed a one-count complaint against McGuireWoods for breach of fiduciary duty. Because plaintiffs had relinquished all of their ownership interest in Beeland, plaintiffs brought this complaint solely in their individual capacities. According to plaintiffs' complaint, McGuireWoods owed plaintiffs a duty to "act with the skill, loyalty, competence and diligence of an ordinary reasonable attorney," which duty McGuireWoods breached by "failing to assert *** obvious claims against Sidley in a timely manner." Plaintiffs further alleged that, as a direct and proximate result of McGuireWoods's breach, the value of the underlying case was "materially compromised" so that plaintiffs were forced to settle for significantly less money than the case originally was worth. Plaintiffs therefore sought: (1) damages in an amount to be proven at trial but "in no event less than $10 million"; (2) the disgorgement of all legal fees paid to McGuireWoods in connection with its handling of the underlying case; and (3) any other further relief that the court deemed equitable.

¶ 7        After taking limited discovery, the parties filed cross-motions for summary judgment. In its motion, McGuireWoods argued that plaintiffs' claim for breach of fiduciary duty was precluded by the doctrine of collateral estoppel. More specifically, McGuireWoods argued that plaintiffs were bound by the trial court's determination in the underlying case that plaintiffs lacked standing to sue Sidley in their individual capacities. Given this, McGuireWoods argued, plaintiffs' claim for breach of fiduciary duty necessarily failed because, even if McGuireWoods had brought plaintiffs' individual claims against Sidley in a timely manner, those claims would have failed as a matter of law for lack of standing. In other words, according to McGuireWoods, because plaintiffs had no standing to sue Sidley in the first place, plaintiffs could not possibly have been injured by McGuireWoods's failure to sue Sidley in a timely manner. The trial court agreed with McGuireWoods and granted its motion for summary judgment. Plaintiffs moved for reconsideration, and the trial court denied that motion.

¶ 8        Plaintiffs appealed, and the appellate court affirmed in part and reversed in part. 2014 IL App (1st) 133952-U. In affirming, the appellate court held that, because the trial court in the underlying case had determined that plaintiffs lacked standing to bring claims against Sidley in their individual capacities, plaintiffs were collaterally estopped from now asserting that they would have prevailed on those claims had McGuireWoods asserted them in a timely manner. *Id.* ¶ 33. However, the appellate court then noted that, unlike its handling of plaintiffs' *individual* claims against Sidley, the trial court in the underlying action never ruled on the merits of plaintiffs' *derivative* claims against Sidley. *Id.* Rather, it dismissed plaintiffs' derivative claims with prejudice solely because those claims were untimely. *Id.* Thus, the appellate court explained, it remains to be seen whether plaintiffs would have prevailed on their derivative claims against Sidley had those claims been timely brought. *Id.* ¶ 36. The appellate court therefore remanded the case to the trial court for a determination as to whether plaintiffs "would have been successful in a derivative suit against Sidley but for McGuireWoods's failure to bring Sidley into the action in a timely manner." *Id.*

¶ 9        McGuireWoods appealed to this court, and we allowed its petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

DISCUSSION

¶ 11     The issue in this court, as it was in the appellate court, is whether the trial court erred in granting McGuireWoods's motion for summary judgment. Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). Where the parties file cross-motions for summary judgment, as they did in this case, they concede the absence of a genuine issue of material fact, agree that only questions of law are involved, and invite the court to decide the issues based on the record. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25. This court reviews summary judgment orders *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010).

¶ 12     The basis of a legal malpractice claim is that, absent the former attorney's negligence, the plaintiff would have been compensated for an injury caused by a third party. *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999). To prevail on such a claim, a plaintiff must plead and prove that (1) the defendant attorneys owed the plaintiff a duty of due care arising from the attorney-client relationship; (2) the defendants breached that duty; and (3) as a direct and proximate result of that breach, the plaintiff suffered injury. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). For purposes of a legal malpractice claim, a plaintiff is not considered to be injured unless and until he has suffered a loss for which he may seek monetary damages. *Id.* The existence of actual damages therefore is essential to a viable cause of action for legal malpractice, and "[u]nless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed." *Id.* at 307. Actual damages are never presumed in a legal malpractice action. *Id.* Rather, a plaintiff in a legal malpractice suit must establish what the result in the underlying action would have been, absent the alleged negligence. *Eastman*, 188 Ill. 2d at 411. Moreover, the plaintiff can be in no better position by bringing suit against the attorney than if the underlying action had been prosecuted successfully. *Id.* at 411-12. Thus, a plaintiff's damages in a legal malpractice suit are limited to "the actual amount the plaintiff would have recovered had he been successful in the underlying case." *Id.* at 412.

¶ 13     Here, plaintiffs are suing McGuireWoods solely in their individual capacities. Their complaint alleges that McGuireWoods owed plaintiffs a duty to "act with the skill, loyalty, competence and diligence of an ordinary reasonable attorney," and that McGuireWoods breached this duty by "failing to assert *** obvious claims against Sidley in a timely manner." The complaint further alleges that, as a direct and proximate result of that breach, plaintiffs suffered monetary damages of no less than $10 million. Thus, to prevail on this claim, plaintiffs would have to prove not only that they would have succeeded on their claims against Sidley had those claims been timely brought, but also that they would have recovered monetary damages for those claims *in their individual capacities*. Otherwise, plaintiffs' cause of action against McGuireWoods cannot succeed. See *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307.

¶ 14     Unfortunately for plaintiffs, they cannot possibly show that, in their individual capacities, they would have recovered monetary damages from the timely assertion of their claims against Sidley. And this is true not only of plaintiffs' individual claims against Sidley, but

also of plaintiffs' derivative claims against Sidley. Taking plaintiffs' individual claims first, we agree entirely with the trial and appellate courts below that plaintiffs are bound by the trial court's determination in the underlying case that, in their individual capacities, plaintiffs lacked any and all standing to sue Sidley. In other words, it is settled for purposes of this case that, in their individual capacities, plaintiffs had no right to sue Sidley in the first place. Given this, McGuireWoods's failure to assert plaintiffs' individual claims against Sidley in a timely manner cost plaintiffs precisely nothing. The trial and appellate courts were exactly right on this point, and we note that plaintiffs themselves no longer contest this portion of the trial court's judgment.

¶ 15    As for plaintiffs' derivative claims against Sidley, though we reach the exact same conclusion, we do so for a different reason. To be sure, and as the appellate court below correctly noted, the trial court in the underlying case never concluded that plaintiffs lacked standing to bring derivative claims against Sidley, nor did it determine that those claims lacked substantive merit. In this sense, plaintiffs' derivative claims stand in a very different position from plaintiffs' individual claims, as the possibility at least remains that plaintiffs could have prevailed on their derivative claims against Sidley had McGuireWoods asserted those claims in a timely manner. That said, plaintiffs have an insurmountable problem even as to their derivative claims. And the insurmountable problem is that, even assuming that McGuireWoods had successfully prosecuted plaintiffs' derivative claims against Sidley, plaintiffs would not have recovered anything from the resulting judgment *in their individual capacities*. This is because derivative claims always and only belong to the corporation on whose behalf they are brought, and any damages awarded in a derivative suit flow exclusively and directly to the corporation, *not* to the nominal plaintiffs. See *Brown v. Tenney*, 125 Ill. 2d 348, 355-57 (1988). Put another way, the nominal plaintiff in a derivative action serves only as a "champion" of the corporation's claims. *Id.* at 357. The result is that the nominal plaintiff benefits only *indirectly* from a successful shareholder derivative suit, for example through an increased value on their shares. *Id.* Though long-settled at common law, these principles also have been codified in the Limited Liability Company Act, which states expressly that, once the nominal plaintiff's fees and expenses have been paid, the trial court "shall direct the plaintiff to remit to the limited liability company" the remainder of all judgment or settlement proceeds. 805 ILCS 180/40-15 (West 2008). In other words, once the costs of bringing a derivative suit are paid, everything recovered belongs to and remits to the limited liability company (LLC), *not* to the nominal plaintiffs.

¶ 16    Given these principles, it would be impossible for plaintiffs to prove that, in their *individual* capacities, they would have recovered monetary damages from the timely assertion of their *derivative* claims against Sidley. Indeed, even assuming that plaintiffs could prove beyond any shadow of a doubt that, absent McGuireWoods's alleged negligence, plaintiffs would have prevailed on their derivative claims against Sidley, both common-law principles and the express terms of the Limited Liability Company Act would mandate that any proceeds recovered remit solely and directly to Beeland, an LLC. And while it is true that plaintiffs might have benefited indirectly under such circumstances from an increased value on their Beeland shares, the loss of that benefit is not something for which plaintiffs can recover in a legal malpractice suit. On the contrary, damages in legal malpractice claims are limited to the amount that the plaintiffs *would have recovered* in the underlying action, and it goes without saying that any resulting increase in share price would have formed no

part of the judgment awarded or recovered in a successful derivative suit against Sidley. That would be an indirect benefit common to all shareholders, and therefore it cannot be recovered in the present action against McGuireWoods.

¶ 17    Looked at another way, plaintiffs in this case are attempting through a legal malpractice suit to put themselves in a vastly superior position to that which they would have been in had they prevailed in the underlying case. As discussed above, had McGuireWoods successfully prosecuted plaintiffs' derivative claims against Sidley in the underlying case, plaintiffs would have recovered nothing *in their individual capacities*. Rather, the resulting judgment or settlement would have remitted entirely and directly to Beeland, with plaintiffs benefiting only indirectly and like all other shareholders through any resulting increase in Beeland's share price. Now, however, plaintiffs are seeking to recover from McGuireWoods damages in excess of $10 million, and they are seeking to recover those damages in their *individual capacities* based upon McGuireWoods's alleged failure to assert *derivative* claims. In other words, through a legal malpractice suit against McGuireWoods, plaintiffs are attempting to collect *for themselves* the full amount of a judgment that, in the underlying case, would have been awarded entirely to Beeland. This is entirely inappropriate and absolutely proscribed by our case law. See *Eastman*, 188 Ill. 2d at 411-12 (the plaintiff in a legal malpractice suit can be in no better position by bringing suit against the attorney than if the underlying action had been prosecuted successfully).

¶ 18    In opposition to this result, plaintiffs offer three arguments, none of which is persuasive. The first we have already addressed, namely, that plaintiffs would have benefited personally from the timely assertion of their derivative claims against Sidley in the form of "equity restored to the corporate entity or damages recovered on its behalf." This is just another way of describing the increase in share value that may have resulted from a judgment entered against Sidley. As discussed above, that is an indirect benefit that plaintiffs would have experienced on the same terms and to the same extent as every other Beeland shareholder. That benefit would not have formed any part of the underlying judgment, nor would it have been awarded to plaintiffs personally by the trial court. As a result, the loss of that benefit is not recoverable against McGuireWoods in this legal malpractice suit, and it therefore cannot form a basis for allowing the present litigation to move forward.

¶ 19    Second, plaintiffs argue that, notwithstanding the well-settled common law and statutory rules governing the ownership and distribution of damages in shareholder derivative suits, the trial court in the underlying case would have had the discretion to award any resulting damages in the derivative suit to plaintiffs *personally*, had it concluded that equity so required. In support, plaintiffs cite this court's 1897 decision in *Brown v. DeYoung*, 167 Ill. 549 (1897). According to plaintiffs, *Brown* represents a "derivative suit" in which, for equitable reasons, this court ordered the defendant majority shareholder to pay damages directly to the minority shareholder plaintiffs personally, rather than to the corporation. Plaintiffs further contend that, in light of *Brown*, "equity may permit—and in some circumstances, equity may demand—that minority shareholders be the personal recipients of restitution or damages recovered on derivative claims." Thus, plaintiffs argue, McGuireWoods's assertion that "shareholders cannot recover individually on derivative claims" is "erroneous," "unsupportable," and "simply wrong."

¶ 20    For two very important reasons, plaintiffs are mistaken. To begin with, plaintiffs' entire argument rests on the premise that *Brown* involved a derivative suit. In fact, *Brown* did not involve a derivative suit. Rather, the plaintiffs in *Brown* were minority shareholders who sued the corporation and two of its officers directly for misappropriation of corporate funds. In other words, and in stark contrast to a derivative suit, the plaintiffs in *Brown* were not suing a third party on the corporation's behalf; rather, they were suing the *corporation itself* on their *own* behalf. Consequently, anything this court had to say about the equitable distribution of the judgment in that case is immaterial to the present controversy, which, unlike *Brown*, involves textbook derivative claims governed by well-settled legal principles. Second, even if *Brown* did involve a derivative suit (which it did not), the trial court in the underlying case would have had no discretion to ignore the interceding statutory mandate that, in a derivative action brought on behalf of an LLC, all judgment or settlement proceeds remit to the corporation, not to the nominal plaintiffs. 805 ILCS 180/40-15 (West 2008). So as it turns out, McGuireWoods has it exactly right—in Illinois, shareholders cannot recover personally on LLC derivative claims, both at common law and by statute. That is the settled law of this state, and it is the rule that governs this case.

¶ 21    Finally, plaintiffs argue that, were this court to rule in McGuireWoods's favor, the result would be to "render an entire class of legal practitioners immune from challenge to their fiduciary duties." According to plaintiffs, this is because a ruling in McGuireWoods's favor would be tantamount to a declaration that "[a]ttorneys handling the derivative actions of minority shareholders [are] immune to legal malpractice cases." Such a decision, plaintiffs insist, "would leave a person who hired a lawyer to bring a derivative action *** with no remedy against the lawyer for breach of the lawyer's fiduciary duty." Once again, plaintiffs are mistaken. The fact that plaintiffs may not recover from McGuireWoods in this particular case does not mean that McGuireWoods, or for that matter any other attorney handling shareholder derivative suits, is "immune to legal malpractice cases." On the contrary, there is any number of parties who, even in this case, could have pursued a legal malpractice action against McGuireWoods for its handling of the derivative claims against Sidley. To begin with, there is Beeland itself, which after all owns the claims that plaintiffs sought to bring derivatively against Sidley. In addition, there are Beeland's remaining minority shareholders, who, if Beeland declined to sue, could have brought a derivative malpractice suit against McGuireWoods on Beeland's behalf. Finally, and most importantly, plaintiffs themselves could have brought a derivative malpractice suit against McGuireWoods had they not divested themselves of any and all ownership interest in Beeland prior to filing the present lawsuit. See, *e.g.*, *Lower v. Lanark Mutual Fire Insurance Co.*, 151 Ill. App. 3d 471, 473 (1986) ("plaintiff in a shareholder's derivative suit must have been a shareholder at the time of the transaction of which he complains and must maintain his status as a shareholder throughout the entire pendency of the action"); see also 805 ILCS 180/40-5 (West 2008) (derivative action on behalf of an LLC must be brought by a "member or transferee who is a substituted member"). Indeed, when they divested themselves of their ownership interest in Beeland, plaintiffs also divested themselves of their right to assert claims on Beeland's behalf, including those related to McGuireWoods's failure to sue Sidley on Beeland's behalf. Thus, it is not the case either that McGuireWoods is "immune to legal malpractice" with respect to shareholder derivative actions, or that plaintiffs who hire attorneys to handle such actions have "no remedy against the lawyer for breach of the lawyer's fiduciary duty." On

the contrary, McGuireWoods remained at all times liable for any malpractice it might have committed with respect to the derivative claims against Sidley, and there are several potential plaintiffs who could have pursued a malpractice claim against it. *These* plaintiffs, however, are no longer among them.

¶ 22 On this last point, we feel compelled to address an issue that, though raised in the trial court, has not been briefed or argued in this court—namely, plaintiffs' standing to sue McGuireWoods for its failure to assert the derivative claims against Sidley. Ordinarily, McGuireWoods's failure to raise this issue would result in forfeiture, as the lack of standing is an affirmative defense that is forfeited if not raised. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). In this case, however, we choose to override the forfeiture in the interest of maintaining a sound and uniform body of precedent. See *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 33. Indeed, we would not want anyone to construe our silence on this point as a tacit recognition that plaintiffs have standing to sue McGuireWoods for its failure to assert the derivative claims against Sidley. The fact is, plaintiffs do not have such standing, and it is therefore best for this court both to state that explicitly and to explain why that is the case.

¶ 23 As discussed above, the law in Illinois is well-settled that, to bring a derivative claim, the plaintiff must have been a shareholder at the time of the transaction of which he complains *and must maintain his status as a shareholder throughout the entire pendency of the action*. This is true both at common law (see *Lower*, 151 Ill. App. 3d at 473) and under the Limited Liability Company Act (see 805 ILCS 180/40-5 (West 2008)). The underlying rationale for this rule is that, because a shareholder will receive at least an indirect benefit (in terms of increased shareholder equity) from a corporate recovery, he has as adequate interest in vigorously litigating the claims. *Lower*, 151 Ill. App. 3d at 473. By contrast, a nonshareholder, or one who loses his shareholder interest during the course of the litigation, may lose any incentive to pursue the litigation adequately. *Id.* at 473-74. Here, plaintiffs concede that they relinquished any and all ownership in Beeland prior to filing the present lawsuit against McGuireWoods. And yet, in their suit against McGuireWoods, plaintiffs are attempting to prove that McGuireWoods was negligent for failing to assert certain claims belonging to Beeland. Plaintiffs have absolutely no standing to do this. To be sure, plaintiffs initially had standing to assert derivative claims against Sidley on Beeland's behalf, as plaintiffs were minority shareholders in Beeland when they filed the underlying case. But having now relinquished their ownership interest in Beeland, plaintiffs likewise relinquished their ability to "champion" Beeland's claims against Sidley, including by extension whether McGuireWoods was negligent for failing to assert those claims in a timely manner. At the time they filed the present action against McGuireWoods, plaintiffs had no ownership stake in Beeland whatsoever. Rather, plaintiffs stood in exactly the same relationship to Beeland as every other member of the general public, none of whom has the right to initiate litigation against McGuireWoods for failing to assert certain legal claims belonging to Beeland. The gravamen of standing is a real interest in the outcome of the controversy, and standing is shown by demonstrating some injury to a legally cognizable interest. *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35. Having sold their interest in Beeland, plaintiffs cannot demonstrate either of these things with respect to McGuireWoods's failure to assert derivative claims against Sidley. Those claims always and only belonged to Beeland, a company in which plaintiffs no longer have any interest or stake. Consequently, though the

parties do not raise it, and though it does not form the primary basis for our decision in this case, we wish to state explicitly that, with respect to McGuireWoods's failure to assert *derivative* claims against Sidley, plaintiffs simply do not have standing to sue McGuireWoods for malpractice.

CONCLUSION

For the reasons set forth above, we hold that (1) plaintiffs are bound by the trial court's determination in the underlying case that plaintiffs had no standing to bring individual claims against Sidley and (2) even assuming they were successful, plaintiffs could not have collected personally on any judgment entered against Sidley on the derivative claims. Consequently, McGuireWoods's failure to assert the contested claims against Sidley in a timely manner caused no injury to plaintiffs in their individual capacities, which is the only capacity in which they are now proceeding. The trial court was correct to enter summary judgment in favor of McGuireWoods, and we therefore reverse the appellate court's decision to the extent that it reverses the trial court's judgment.

Appellate court judgment affirmed in part and reversed in part.

Circuit court judgment affirmed.