# Illinois Official Reports

## Appellate Court

---

*Village of Campton Hills v. Comcast of Illinois V, Inc.*,
**2019 IL App (2d) 190055**

---

Appellate Court
Caption

THE VILLAGE OF CAMPTON HILLS, Plaintiff and Defendant-Appellee and Cross-Appellant, v. COMCAST OF ILLINOIS V, INC., Defendant and Plaintiff and Counter-Defendant (The County of Kane, Defendant and Counter-Plaintiff-Appellant and Cross-Appellee).

District & No.

Second District
No. 2-19-0055

Filed

November 18, 2019

Decision Under
Review

Appeal from the Circuit Court of Kane County, Nos. 13-L-134, 13-MR-279; the Hon. Mark A. Pheanis, Judge, presiding.

Judgment

Affirmed; cross-appeal dismissed.

Counsel on
Appeal

Joseph H. McMahon, State's Attorney, of Geneva (Joseph F. Lulves, Assistant State's Attorney, of counsel), for counterclaimant-appellant County of Kane.

Adam B. Simon and Julie A. Tappendorf, of Ancel Glink, P.C., of Vernon Hills, for appellee Village of Campton Hills.

Ronald O. Roeser, of Roeser & Vucha, LLC, of Elgin, for other appellee.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Bridges concurred in the judgment and opinion.

**OPINION**

¶ 1      This action involves a dispute regarding which government unit is entitled to certain cable franchise fees from Comcast of Illinois V, Inc. (Comcast) for 2008 through 2012. The Village of Campton Hills (Village) filed suit against Comcast to recover the fees. Comcast filed a declaratory judgment action against the Village and the County of Kane (County) to decide the question, as Comcast had paid fees to both the County and the Village at different times during the five-year period. The County filed a counterclaim against Comcast for recovery of unpaid fees and for indemnification. On cross-motions for summary judgment, the trial court determined that, because the Village had incorporated in 2007, it was entitled to the fees for the contested five-year period, and the court ordered Comcast to pay $283,644.44, the amount Comcast owed for that period. The trial court also ordered the County to reimburse Comcast $410,243.73 for the fees it paid the County during the five-year period. The trial court denied the County's claim for indemnification against Comcast.

¶ 2      The County appeals, arguing that the trial court exceeded its authority by reforming the contract between it and Comcast and that the trial court erred by denying the County's indemnification claim against Comcast. The Village cross-appeals, arguing that the trial court erred by determining that incorporation of a municipality and annexation have the same meaning pursuant to section 5-1095 of the Counties Code (55 ILCS 5/5-1095 (West 2016)). For the reasons that follow, we affirm the trial court's judgment, and we dismiss the Village's cross-appeal.

¶ 3                      I. BACKGROUND

¶ 4      In March 1988, the County passed Kane County Ordinance No. 88-31 (eff. Mar. 8, 1988) (Ordinance No. 88-31), establishing a franchise framework for cable services in unincorporated areas of the County, which included the unincorporated area that later became the Village. Comcast is the successor in interest to the original franchise named in Ordinance No. 88-31.

¶ 5      Section 11(a) of Ordinance No. 88-31 provided in part:

> "The payments required under this section shall continue to the length and extent allowed by law even though all or part of its designated area becomes incorporated by a municipality within the effective term of this ordinance." Kane County Ordinance No. 88-31 (eff. Mar. 8, 1988).

Section 13 of Ordinance No. 88-31 provided that "[t]his ordinance shall remain in full force and effect until November 2003." *Id.* Beginning in November 2004, the Kane County Board passed annual resolutions purporting to extend Ordinance No. 88-31.

¶ 6      In April 2007, the Village was incorporated. On December 31, 2007, the Village and Comcast entered into a franchise agreement, effective January 1, 2008.

¶ 7 In March 2013, the Village filed a complaint against Comcast for recovery of unpaid franchise fees.[1] Later that same month, Comcast filed a declaratory judgment action against the Village and the County to determine which party was entitled to the franchise fees Comcast had paid to both parties for the years 2008 through 2012.[2]

¶ 8 In May 2013, the County filed a counterclaim against Comcast for recovery of unpaid franchise fees and for indemnification. The County alleged the following:

> "Comcast has been and is still subject to Ordinance 88-31. It has operated under the Ordinance for many years and continues to do so today. In fact, Comcast officials continued to negotiate with the County about entering into a 'franchise agreement' through 2011 and 2012 until the County learned Comcast failed to pay certain franchise fees in August 2012. *** Under the terms of the Ordinance, State law, and custom [and] practice, [Comcast] had an obligation to [pay franchise fees] for a five year period commencing on January 16, 2008. It did so, unbeknownst to the County, until it paid only partial franchise fees in 2011, and [paid] no franchise fees in 2012 or 2013."

¶ 9 The County further alleged that it was entitled to "expenses including audit expenses, county staff time, costs and reasonable attorney fees for which Comcast is responsible [(pursuant to Ordinance 88-31, section 4, entitled 'OPERATOR LIABILITY AND INDEMNIFICATION')]." The County sought the following: (a) the unpaid franchise fees; (b) reasonable attorney fees, costs, the value of time invested by County staff, and other out-of-pocket expenses incurred by the County; (c) prejudgment interest; and (d) other relief as determined by the court. The County attached Ordinance No. 88-31 and the resolutions purporting to extend Ordinance No. 88-31. The resolutions are listed below:

| RESOLUTION NUMBER | DATE PASSED | EXPIRATION DATE |
| --- | --- | --- |
| 04-408 | November 9, 2004 | November 30, 2005 |
| 06-436 | November 14, 2006 | November 30, 2007 |
| 07-408 | December 11, 2007 | November 30, 2008 |
| 08-345 | November 12, 2008 | November 30, 2009 |
| 11-342 | November 8, 2011 | November 30, 2012 |
| 12-367 | December 11, 2012 | November 30, 2013 |

The trial court consolidated the cases.

¶ 10 In August 2016, the Village filed a motion for partial summary judgment, arguing the following. Based on Ordinance No. 88-31, the County's franchise originally expired in November 2003 and, although the County extended the franchise, it expired when the Village granted a franchise to Comcast on December 31, 2007. Section 5-1095(a) of the Counties Code (55 ILCS 5/5-1095(a) (West 2016)) limited the County's franchise authority to the territory outside the boundaries of the Village, a municipality.

¶ 11 Section 5-1095(a) of the Counties Code provides in relevant part:

---

[1]Case No. 13 L 0134.

[2]Case No. 13 MR 279.

"(a) The County Board may license, tax or franchise the business of operating a community antenna television system or systems within the County and outside of a municipality, as defined in Section 1-1-2 of the Illinois Municipal Code.

When an area is annexed to a municipality, the annexing municipality shall thereby become the franchising authority with respect to that portion of any community antenna television system that, immediately before annexation, had provided cable television services within the annexed area under a franchise granted by the county, and the owner of that community antenna television system shall thereby be authorized to provide cable television services within the annexed area under the terms and provisions of the existing franchise. In that instance, the franchise shall remain in effect until, by its terms, it expires, except that any franchise fees payable under the franchise shall be payable only to the county for a period of 5 years or until, by its terms, the franchise expires, whichever occurs first. After the 5 year period, any franchise fees payable under the franchise shall be paid to the annexing municipality." *Id.*

¶ 12 The Village also argued that annexation is not the same as incorporation and that, thus, the five-year period provided in section 5-1095 of the Counties Code did not apply. The Village asked the trial court to order Comcast to pay the franchise fees that were improperly paid to the County, to be established based on the gross revenue allocable to subscribers residing within the Village, for the period of January 1, 2008, through December 31, 2012.

¶ 13 Comcast responded that at issue was the application of section 5-1095 of the Counties Code, which provides that, when a franchise expires, fees should continue to be paid to the County for a period of five years for territory "annexed" to a municipality. Comcast asserted that the dispute in this case depended upon whether "incorporation" was the same as "annexation" for purposes of applying section 5-1095. Comcast argued that the words "annexation" and "incorporation" have the same meaning. Comcast further argued that the Village was aware of the application of section 5-1095 because its 2007 agreement with Comcast provided:

"Due to the Village's recent incorporation, the Village shall indemnify the Grantee in the event the County of Kane, State of Illinois, makes any claim for franchise fees, which have been paid to the Village, generated from the Grantee's cable system in a franchise area which is now the Village of Campton Hills."

¶ 14 Comcast also argued that the Village was aware that it was not entitled to immediate payment of franchise fees, as revealed by the Village board's discussions in 2009 regarding a loan agreement between the County and the Village "whose pay-back was delayed until the cable fees were to begin going to the Village." In addition, Comcast asserted that the County's extensions constituted a "continuation of a contract between the parties governing the terms and conditions of the franchise arrangement."

¶ 15 The County also responded to the Village's motion for partial summary judgment, essentially adopting Comcast's arguments regarding section 5-1095 and the County's extensions.

¶ 16 On December 7, 2016, the trial court denied the Village's motion for partial summary judgment. The trial court determined that the term "annexation" encompassed "incorporation." The trial court reasoned:

"To find otherwise would illogically require a determination that the legislature was concerned and desirous of insulating counties from the immediate loss of the minimal franchise fees covering as little as a half a block through annexation, but unconcerned about the major loss that could occur through incorporation of an entire city."

The trial court also determined that "questions of fact exist[ed] regarding the extent of the County's franchise agreement."

¶ 17    In March 2018, all three parties filed motions for summary judgment.

¶ 18    On July 23, 2018, the trial court noted that the Village incorporated in April 2007 and that the County's franchise in place at that time expired on November 30, 2007. Further, pursuant to section 5-1095 of the Counties Code, "Comcast's payments to [the County] would continue only until the current agreement expired." Therefore, the court determined that the Village's franchise commenced on January 1, 2008, and that the Village was entitled to all subsequent franchise fees for the Village franchise area. The court also ordered the parties to brief (1) whether, pursuant to the voluntary-payment doctrine or governmental immunities, Comcast's erroneous payments to the County were nonrecoverable as contended by the County and (2) whether, pursuant to an indemnification agreement or an equitable doctrine, the County was liable to Comcast, the Village, or both for the overpayment the County received.

¶ 19    On September 18, 2018, the trial court found that Comcast was due a credit of $126,599.29 against the sum it owed to the Village and that the Village was entitled to the franchise fees improperly paid to the County since January 1, 2008. The court incorporated its July 23, 2018, ruling and ordered the County to "reimburse" Comcast $410,243.73 within 40 days and ordered Comcast to pay the Village $283,644.44 (reflecting the credit) within 40 days.

¶ 20    On October 17, 2018, the County filed a motion to vacate or modify the trial court's September 18, 2018, order. The County argued the following. The court exceeded its equitable authority by reforming a contract between Comcast and the County. Therefore, the County was entitled to five years of franchise fees after the Village's incorporation, pursuant to section 5-1095 of the Counties Code. Further, the court's order was ambiguous and contradictory because, although the court found that the County's extensions were an appropriate means of extending the franchise, the court also determined that the franchise expired on November 30, 2007. Finally, the County sought indemnification by Comcast, pursuant to section 4 of Ordinance No. 88-31. On the same date, the County also filed a motion to stay the enforcement of the court's September 18, 2018, order "until further order of the Court."

¶ 21    On October 30, 2018, the trial court stayed the September 18, 2018, order until further notice. The Village and Comcast responded separately to the motion to vacate or modify, and the County replied to each.

¶ 22    On December 19, 2019, after argument, the trial court denied the County's motion to vacate or modify. The court extended the stay to February 6, 2019.

¶ 23    On January 15, 2019, the County filed a motion to stay the judgment pending appeal, pursuant to Illinois Supreme Court Rule 305(i) (eff. July 1, 2017).

¶ 24    The County filed its notice of appeal on January 17, 2019. The Village filed a notice of cross-appeal on March 12, 2019.

II. ANALYSIS

¶ 26 A. Standard of Review

¶ 27 Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). When, as here, the parties file cross-motions for summary judgment, "they concede the absence of a genuine issue of material fact, agree that only questions of law are involved, and invite the court to decide the issues based on the record." *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 11. We review *de novo* a trial court's ruling on motions for summary judgment. *Id.*

¶ 28 B. Section 5-1095(a) of the Counties Code

¶ 29 The County argues that the trial court exceeded its authority by reforming or modifying an agreement between it and Comcast that would have entitled the County to receive franchise fees for five years after the Village incorporated, pursuant to section 5-1095(a) of the Counties Code. For convenience, we again provide the relevant part of section 5-1095(a):

"(a) The County Board may license, tax or franchise the business of operating a community antenna television system or systems within the County and outside of a municipality, as defined in Section 1-1-2 of the Illinois Municipal Code.

When an area is annexed to a municipality, the annexing municipality shall thereby become the franchising authority with respect to that portion of any community antenna television system that, immediately before annexation, had provided cable television services within the annexed area under a franchise granted by the county, and the owner of that community antenna television system shall thereby be authorized to provide cable television services within the annexed area under the terms and provisions of the existing franchise. In that instance, the franchise shall remain in effect until, by its terms, it expires, except that any franchise fees payable under the franchise shall be payable only to the county for a period of 5 years or until, by its terms, the franchise expires, whichever occurs first. After the 5 year period, any franchise fees payable under the franchise shall be paid to the annexing municipality." 55 ILCS 5/5-1095(a) (West 2016).

¶ 30 Comcast argues that the trial court correctly determined that "annexation" encompasses "incorporation" within the meaning of section 5-1095(a). Comcast argues that Ordinance No. 88-31 established the cable franchise framework for the unincorporated areas of the County and set up the initial franchise term with the County. Comcast asserts that the original franchise term was extended through 2013 by the County's extensions and by the "course of conduct of Comcast and the County." Thus, according to Comcast, pursuant to section 5-1095(a) of the Counties Code, when the Village incorporated, the County had the right to continue to receive franchise fees "for a period of five years or until, by its terms, the franchise expires, whichever occurs first." See *id.*

¶ 31 The Village argues that the first sentence of section 5-1095(a) limits the County's authority to license, tax, or franchise a cable operator to "systems within the County and outside of a municipality." *Id.* Therefore, the Village argues, the trial court correctly limited the County's franchising authority after November 30, 2007, when its extension expired, and the trial court

correctly awarded the Village franchise fees after January 1, 2008, the effective date of the Village's franchise. The Village further argues that the statute does not provide any exception to a county's limited authority.

¶ 32    Our primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 12. The most reliable indication of legislative intent is the plain language of the statute, which must be given its plain and ordinary meaning. *Id.* "In determining the plain language of a statute, we consider the statute in its entirety, keeping in mind the subject it addresses and the intent of the legislature in enacting the statute." *Id.* When statutory language is clear and unambiguous, we may not depart from the statute's plain language and meaning by reading into it exceptions, limitations, or conditions that the legislature did not express. *Id.* Further, we must presume that the legislature did not intend to create absurd, inconvenient, or unjust results. *Id.* The interpretation of a statute is a question of law, subject to *de novo* review. *Id.*

¶ 33    Here, the first sentence of section 5-1095(a) is dispositive. It provides:

> "(a) The County Board may license, tax or franchise the business of operating a community antenna television system or systems within the County and outside of a municipality, as defined in Section 1-1-2 of the Illinois Municipal Code." 55 ILCS 5/5-1095(a) (West 2016).

Further, section 1-1-2 of the Illinois Municipal Code provides, "(1) ' "Municipal" ' or ' "municipality" ' means a city, *village*, or incorporated town in the State of Illinois ***." (Emphasis added.) 65 ILCS 5/1-1-2 (West 2016).

¶ 34    The first sentence of section 5-1095(a) granted the County the authority to franchise and tax Comcast but limited that authority to areas "within the County and outside of a municipality." 55 ILCS 5/5-1095(a) (West 2016). In April 2007, the Village incorporated as a municipality as defined in the Municipal Code. In November 2007, the County's franchise (extended by resolution) expired. The County's attempt to pass an extension in December 2007 was after the prior extension's expiration and was ineffective as to property within the Village. Therefore, when the Village passed its Comcast franchise ordinance, effective January 1, 2008, it was the only effective franchising authority and the only entity entitled to collect fees from that time forward.

¶ 35    Although the trial court did not base its judgment on this reasoning, we review the trial court's judgment, not its reasoning. *Fogt v. 1-800-Pack-Rat, LLC*, 2017 IL App (1st) 150383, ¶ 92. As a reviewing court, we can sustain the trial court's decision on any grounds called for by the record, regardless of whether the court relied on those grounds and regardless of whether the court's reasoning was sound. *Id.*

¶ 36    The County argues that the trial court exceeded its authority by modifying the franchise agreement between the County and Comcast. However, the County ignores section 11(a) of Ordinance No. 88-31, which provides, in part:

> "The payments required under this section shall continue to the length and extent allowed by law even though all or part of its designated area becomes incorporated by a municipality within the effective term of this ordinance."

¶ 37    Here, in April 2007, a part of the County's designated area was incorporated as the Village. Thus, pursuant to "law," section 5-1095(a) of the Counties Code, that part of the area was no longer subject to the County's franchise agreement. However, the incorporation of the Village

did not impact the County's franchise agreement with respect to the parts of the County that remained unincorporated. Thus, the trial court did not improperly modify the County's franchise agreement with Comcast; rather, it ruled in conformity with the contract and the law.

¶ 38 Accordingly, we determine that the trial court properly granted summary judgment in favor of the Village and against the County.

¶ 39                                          C. Indemnification Claim

¶ 40 Next, the County argues that the trial court erred by denying its indemnification claim against Comcast. The County urges us to reverse the denial, because the indemnification language in section 4 of Ordinance No. 88-31 is "very broad," providing, " '[t]hese damages or penalties shall include, but shall not be limited to,' " those listed. Comcast argues that the County is not entitled to indemnification because the court did not order the County to pay damages. Ordinance No. 88-31, section 4, provides, in relevant part:

> "Section 4. OPERATOR LIABILITY AND INDEMNIFICATION
>
> (a) The Operator [(Comcast)] shall pay and by acceptance of this Franchise the Operator specifically agrees that it will pay all *damages* and penalties including costs and attorney's fees which the County may legally be required to pay as a result of granting this Franchise. These *damages* or penalties shall include, but shall not be limited to, damages arising out of the installation, operation or maintenance of the system authorized herein, whether or not any act of [*sic*] omission complained of is authorized, allowed or prohibited by this Franchise.
>
> (b) The Operator shall pay and by its acceptance of this Franchise specifically agrees that it will pay all expenses incurred by the County in defending itself with regard to all *damages* and penalties mentioned in subsection (a) above. These expenses shall include all out-of-pocket expenses, such as costs and attorneys' fees, and shall include the reasonable value of any services rendered by the County's attorney or his or her assistants or any employees of the County." (Emphases added.) Kane County Ordinance No. 88-31 § 4 (eff. Mar. 8, 1988).

¶ 41 The primary objective in interpreting a contract is to give effect to the intent of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). The best indication of the parties' intent is the contract's language, given its plain, ordinary, and popular meaning. *Id.* If the language of a contract is unambiguous, the court must derive the parties' intent from the writing itself. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004).

¶ 42 While the word "damages" is not defined in the ordinance, an undefined term in a contract will be given its plain and ordinary meaning, which is found in its standard dictionary definition. *Laport v. MB Financial Bank, N.A.*, 2012 IL App (1st) 113384, ¶ 15. The word "damages" is defined as "money demanded or paid according to law for injury or damage," and "damage" is defined as "loss or harm resulting from injury to person, property, or reputation." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/damage (last visited Oct. 29, 2019) [https://perma.cc/XZ5H-2LU3].

¶ 43 Here, the trial court did not order the County to pay damages; rather it ordered the County to reimburse Comcast for the fees Comcast overpaid to the County. Therefore, the indemnification provision does not permit recovery as contended, and the trial court properly

denied the County's claim.

¶ 44                           D. The Village's Cross-Appeal

¶ 45      Finally, we turn to the Village's cross-appeal, which we determine is improper. "A party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386 (1983). Further, "[i]t is fundamental that the forum of courts of appeal should not be afforded to successful parties who may not agree with the reasons, conclusion or findings below." *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 414 Ill. 275, 282-83 (1953). Since the Village prevailed below and was granted all the relief it requested, we must dismiss its cross-appeal and all arguments in support thereof. See *Chicago Tribune v. College of Du Page*, 2017 IL App (2d) 160274, ¶ 28.

¶ 46                                 III. CONCLUSION

¶ 47      The judgment of the circuit court of Kane County is affirmed. The Village's cross-appeal is dismissed.

¶ 48      Affirmed; cross-appeal dismissed.