2022 IL App (2d) 210007
No. 2-21-0007
Opinion filed March 17, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS POWERS, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-MR-424 |
| | ) | |
| DAVID DOLL, in His Official Capacity as | ) | |
| Winnebago County Public Defender, and | ) | |
| JACOB RUBIN, in His Official Capacity | ) | |
| as Winnebago County Assistant Public | ) | |
| Defender, | ) | Honorable |
| | ) | Donna R. Honzel, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Jorgensen and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     We consider in this appeal whether an individual presently committed under the Sexually

Violent Persons Commitment Act (SVP Act) (725 ILCS 207/1 *et seq.* (West 2012)) may file suit

for legal malpractice without first alleging that he is not, in fact, a sexually violent person (SVP).

We hold that he may not.

¶ 2                                    I. BACKGROUND

¶ 3     In 2001, a jury found plaintiff, Thomas Powers, guilty of attempted aggravated criminal

sexual assault with a weapon (720 ILCS 5/8-4(a), 12-14(a)(1) (West 2000)). Powers was sentenced

to 25 years' imprisonment, and we affirmed his conviction and sentence on direct appeal (*People v. Powers*, No. 2-01-0496 (2003) (unpublished order under Illinois Supreme Court Rule 23)). In 2007, we held that Powers was entitled to withdraw his notice of appeal from the second-stage dismissal of his postconviction petition (*People v. Powers*, 376 Ill. App. 3d 63 (2007)). The case returned to the circuit court, and we have no record regarding what occurred, if anything, on remand. Nevertheless, Powers likely served out his criminal sentence.

¶ 4     In May 2020, Powers filed his *pro se* "Complaint for Legal Malpractice" against defendants, David Doll and Jacob Rubin, his former attorneys.  In this appeal, we take what limited information we can from Powers's *pro se* complaint, apply the relevant statutory authority, specifically the SVP Act, and sketch out what we believe Powers has alleged. We note, too, that although Powers's complaint was typed in all capital letters, we will quote from it in sentence case for the reader's convenience. We also take Powers's allegations as true at this juncture. See *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 44.

¶ 5     In 2012, before Powers's sentence was terminated, the Attorney General filed a petition to have Powers committed under the SVP Act, which initiated case No. 12-MR-419. On June 20, 2012, the circuit court hearing the petition appointed the public defender's office to represent Powers, and Assistant Public Defender (APD) Doll began to represent him. See 725 ILCS 207/30(e) (West 2012). On June 25, 2012, a probable cause hearing was held. See *id.* § 30(b). Powers alleged that Doll was completely unprepared for the hearing, failed to call an expert witness to rebut the testimony of the State's expert (though Powers does not say whom Doll should have called), failed to depose "this doctor" (again unnamed) consistent with Powers's request, and "refused to order a 'PPG' "—or, penile plethysmography—"to scientificly [*sic*] prove whether [Powers] suffered from a disorder of sexual arousal to 'nonconsenting' females." Powers also

faults Doll for not understanding that SVP proceedings are civil in nature (*id.* § 20) on one hand, and on the other asserts that Doll should have filed a "speedy trial" demand (which is inapplicable in noncriminal proceedings (see 725 ILCS 5/103-5 (West 2012)). These "failure[s]" caused Powers to dispense with Doll's services, "due to the court's refusal to appoint an effective attorney."

¶ 6       Powers began representing himself *pro se* on October 11, 2012. Powers was ultimately found to be an SVP and has resided at the Illinois Department of Human Services facility in Rushville ever since.

¶ 7       On April 2, 2015, the circuit court reappointed the public defender's office to represent Powers. (Although Powers does not say, we assume that it was either for a petition by Powers for reexamination by a court-appointed expert (725 ILCS 207/55 (West 2012)) or for conditional release (*id.* § 60).) At this point, APD Rubin began representing Powers, but Powers was "unaware" that Doll was Rubin's supervisor. (Doll became the county's chief public defender in 2016.)

¶ 8       Meanwhile, Rubin "failed to communicate" with Powers and further failed to "do adequate research," "perform discovery," or understand that the SVP Act is "civil in nature." Rubin also "failed to inform or obtain [Powers's] consent," has not "follow[ed] [Powers's] instructions," secured Powers's "release," or compelled the State to respond to Powers's "*pro se* discovery." Powers asserts that "Doll[ ] is directly responsible for Rubin's actions" and that these failures are "common practice" in the public defenders office's representation of individuals under the SVP Act. This has all "caused an ongoing continuous deprivation of [Powers's] liberty to perfect his release from unlawful detention."

¶ 9       Powers noted that on January 4, 2017, he "recused" Rubin and represented himself *pro se*. He then obtained an evaluation by Dr. Diane Lytton, who would opine that Powers is not a sexually

violent person. Rubin was then reappointed by the trial court in June 2019, although Powers does not relay the circumstances under which Rubin was reappointed or the proceedings that were occurring. Powers laments that Rubin was "unprepared" for a "February and March 2020 hearing on motion *in limines* [*sic*]" and failed to object to the State's motion *in limine*. Powers further asserts that he has a "speedy trial demand" on file and that Rubin has inexplicably caused further delay, over Powers's objection. Citing *Strickland v. Washington*, 466 U.S. 668 (1984), Powers accused Rubin of deficient performance.

¶ 10    In his prayer for relief, Powers asked for (1) a declaration that Doll and Rubin "have a duty" to him, (2) a court order mandating that the public defender's office create "a separate division *** for 'SVP' cases," "actual costs" for any "undue delay past '120' days," court costs, and any further relief to which Powers is entitled.

¶ 11    Defendants, represented by the county's state's attorney, filed a motion to dismiss Powers's complaint, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2020)). Specifically, defendants asserted that the circuit court lacked subject matter jurisdiction (*id.* § 2-619(a)(1)) because Powers was still committed pursuant to an ongoing SVP order and further that his malpractice complaint was not filed within the one-year limitations period (*id.* § 2-619(a)(5)) applicable to public defenders as county employees (745 ILCS 10/8-101 (West 2020)). According to defendants, Powers had knowledge of the facts supporting his claims as late as January 4, 2017, when he discharged Rubin as counsel, yet waited until May 29, 2020, to file his complaint.

¶ 12    In an unverified response to defendants' motion, Powers asserted that Rubin's representation of him ended May 20, 2020 ("after causing a 300[-]day delay"), and therefore his complaint filed on May 29, 2020, was timely.

¶ 13 Defendants thereafter filed an amended motion to dismiss, which noted that, under the Public and Appellate Defender Immunity Act, defendants have qualified immunity, "except for willful and wanton misconduct." 745 ILCS 19/5 (West 2020). Defendants' amended motion stated that Powers's allegations "clearly go to" defendants' representation of him; but the motion failed to assert that Powers failed to allege willful and wanton misconduct.

¶ 14 In any event, the circuit court held a hearing, at which Powers appeared remotely. The court then entered an order granting defendants' motion to dismiss, finding that (1) Powers's claims "up to Januarry [*sic*] of 2017 are barred by the statute of limitations"; (2) Powers's claims concerning Rubin's representation "are dismissed as there is another case pending, [ ]12 MR 419, involving the same claims"; and (3) "[d]efendants have immunity as state actors." Powers's motion to reconsider was denied, and he filed a timely notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16 The SVP Act authorizes the involuntary civil commitment of a person adjudged to be an SVP, for "control, care and treatment until such time as the person is no longer a sexually violent person." 725 ILCS 207/40(a) (West 2018). The SVP Act defines an SVP as a person who has been convicted of a sexually violent offense and suffers from a mental disorder that makes it substantially probable that he will engage in acts of sexual violence. *Id.* § 5(f).

¶ 17 As noted, defendants moved to dismiss under section 2-619 of the Code. A section 2-619 motion to dismiss admits the legal sufficiency of a complaint but raises defenses that defeat its allegations. See *People v. Conley*, 2020 IL App (2d) 180953, ¶ 8 (discussing civil procedure in the analogous context of sexually dangerous persons' litigation). One such defense is "[t]hat the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020).

Another is that there is an "affirmative matter"—such as a public official's tort immunity—that defeats the claim. *Id.* § 2-619(a)(9).

¶ 18    The problem here is that none of the defenses are clear-cut because none of Powers's allegations are clear-cut or well-pled. On this score, the circuit court's dismissal order is puzzling. The court dismissed his complaint partly because it was untimely, partly because it "involv[ed] the same claims" as his "pending" SVP proceedings, and partly because both defendants have tort immunity. None of those rationales were quite right.

¶ 19    For example, it is impossible to figure out when Powers's claims began to accrue, because it is unclear from his complaint on what date Doll or Rubin committed an act of malpractice. Moreover, it is unclear which statute of limitations the circuit court applied when it selected the entire month of January 2017 as the operative time that barred Powers's claims. With an exception for cases of medical malpractice, there is a one-year limitations period on all actions against a public employee under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101(a) (West 2020)), but the Code provides for a two-year limitations period on legal malpractice claims (735 ILCS 5/13-214.3 (West 2020)). Also, it would appear that the court selected January 2017 because Powers noted that January 4, 2017, was the date on which he first dispensed with Rubin's services. But Rubin's dismissal as Powers's counsel merely indicates that Powers was dissatisfied with his attorney; it does not follow that, on that date, Powers necessarily had notice of Rubin's supposed legal malpractice. True, one might dislike his attorney because of counsel's negligence, but then again, one might dismiss his attorney merely because they do not get along.

¶ 20    Similarly, the circuit court was incorrect when it stated that Powers' SVP case (No. 12-MR-419) involved the "same claims" as this legal malpractice action. The former involves

Powers's indefinite civil commitment to a secure facility; the latter involves a claim for legal malpractice, which (typically) seeks monetary damages, arising from counsel's alleged negligence within the SVP case. Though both cases stem from the same operative facts, they involve different claims, with different parties, and seek different relief. *Cf. DeLuna v. Treister*, 185 Ill. 2d 565, 572 (1999) (noting that *res judicata* involves the same claims against the same parties). Thus, Powers's SVP case was not the same as this legal malpractice action.

¶ 21     Next, it is unclear on what basis the circuit court found defendants immune. The court's order implies that it found defendants absolutely immune "as state actors[,]" but as the motion to dismiss noted, defendants, as public defenders, have only *qualified* immunity, "except for willful and wanton misconduct." 745 ILCS 19/5 (West 2020).

¶ 22     Finally, to the extent the State suggested that the circuit court lacked subject matter jurisdiction, its assertion is incorrect. When assessing the court's jurisdiction, " 'the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine. If it does, then subject matter jurisdiction is present.' " (Emphasis in original.) *People v. Vasquez*, 2013 IL App (2d) 120344, ¶ 16 (citing *In re Luis R.*, 239 Ill. 2d 295, 301 (2010)). In this state, the circuit court is the appropriate forum to hear both SVP cases as well as claims for legal malpractice. Thus, the circuit court unquestionably had subject matter jurisdiction.

¶ 23     With all of that said, our primary focus is on the result of the circuit court's order, not its rationale. See *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998); *Geick v. Kay*, 236 Ill. App. 3d 868, 873 (1992). We determine here that the result, the dismissal of Powers's complaint, was correct because, under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), his complaint failed to state a claim for legal malpractice. Our review under either section 2-615 or section 2-619 of

the Code is *de novo*, and we can affirm on any basis present in the record. *Hadley v. Doe*, 2015 IL 118000, ¶ 29.

¶ 24    A claim for legal malpractice requires that a plaintiff allege the following: (1) the existence of an attorney-client relationship, (2) a negligent act or omission constituting a breach of the attorney's duty to the client, which (3) was the proximate cause of the plaintiff's injury, and (4) resulted in actual damages. *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 12. "Actual damages are never presumed in a legal malpractice action" and a plaintiff "must establish what the result in the underlying action would have been, absent the alleged negligence." *Id.*

¶ 25    We recently noted a corollary to this rule when a former client attempts to sue his attorney following a conviction in a *criminal* matter:

"Illinois cases recognize that, generally, a criminal defendant who sues his criminal defense attorney for legal malpractice must also plead and prove that he is actually innocent of the charges in that criminal case. *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 821 (1998). This additional element is necessary to eliminate the possibility that someone found guilty of a crime would profit from his criminal activity. *Id.* (citing *Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997) (tort law allows damages only for harms to a plaintiff's legally protected interests, and the liberty of a *guilty* criminal is not one of them)). Thus, '[a] plaintiff who wants to sue his former criminal defense counsel for [legal] malpractice must prove his innocence—a requirement he cannot meet unless his conviction has been overturned.' *Paulsen* [*v. Cochran*], 356 Ill. App. 3d [354,] 359 [(2005)]." *Rojo v. Tunick*, 2021 IL App (2d) 200191, ¶ 34. (Emphasis in original.)

Thus, in *Rojo*, we held "that the absence of an actual-innocence allegation barred" the legal malpractice claim asserting that the defendant's deficient performance led to the plaintiff's

conviction. *Id.* ¶ 40.

¶ 26    The same principles apply to this case as well. Although SVP proceedings are ostensibly civil (as Powers has repeatedly pointed out), they implicate a number of constitutional rights and have more "in common with criminal cases as compared to civil cases." *In re Commitment of Gavin*, 2014 IL App (1st) 122918, ¶¶ 54-56. As our supreme court has noted, indefinite civil commitment proceedings are not "conventional civil case[s]." *People v. Lawton*, 212 Ill. 2d 285, 300 (2004). Indeed, an SVP faces the very real possibility of " 'confinement for life.' " *Gavin*, 2014 IL App (1st) 122918, ¶ 55 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 372 (1997) (Kennedy, J., concurring)); see also *Lawton*, 212 Ill. 2d at 296 (noting that "the liberty interests of those subject to involuntary commitment *** are no less significant than those of persons facing incarceration for criminal conduct").

¶ 27    In addition, much like a criminal defendant, an SVP may directly and collaterally attack a final SVP order (see *Lawton*, 212 Ill. 2d at 294-303) and has numerous opportunities to assert counsel's ineffectiveness *within* the underlying SVP proceedings (see *In re Commitment of Bushong*, 351 Ill. App. 3d 807, 816-17 (2004)). As we noted in *Rojo*, various opportunities to establish counsel's ineffectiveness—which is " 'the counterpart to malpractice' " (*Rojo*, 2021 IL App (2d) 200191, ¶ 39 (quoting *Winniczek v. Nagelberg*, 394 F.3d 505, 507-08 (7th Cir. 2005)))—and thereby unwind an unfavorable criminal judgment, are simply unavailable to ordinary civil litigants. Consequently, an SVP, much like a criminal defendant, " 'has less need for a damages remedy than the loser of a civil lawsuit.' " *Id.* (quoting *Winniczek*, 394 F.3d at 507-08).

¶ 28    Just as a criminal defendant cannot state a claim for legal malpractice without asserting actual innocence (*id.* ¶ 40), we determine that an SVP must plead that he is *not* an SVP in order to assert a claim for damages arising from legal malpractice in the underlying SVP proceedings.

Without this allegation, Powers's complaint failed to allege proximate cause—namely, that he was found to be an SVP, or was denied conditional release, *because* of his counsel's errors and *not* because he was or remains an SVP.

¶ 29 And that is only the first of several obstacles Powers's complaint failed to clear. In *Rojo*, we noted that an actual-innocence allegation must be present in the complaint to state a claim, but that did not abrogate earlier cases holding that the conviction must have been set aside *before* a legal malpractice action may be pursued further. See, *e.g.*, *Johnson v. Halloran*, 194 Ill. 2d 493 (2000) (considering claim for legal malpractice against public defenders *after* client was exonerated through postconviction proceedings). We see no reason why the same result, that Powers's SVP commitment must first be overturned or set aside, should not obtain here. Furthermore, a court hearing a legal malpractice claim has the power to grant only *monetary* relief. See *Stevens*, 2015 IL 118652, ¶ 12. Powers failed to plead actual, meaning monetary, damages. Any or all of these shortcomings were valid reasons to dismiss his complaint.

¶ 30                                    III. CONCLUSION

¶ 31 Because Powers failed to allege that he was not an SVP, his complaint for legal malpractice failed to state a claim on which relief could be granted. We therefore affirm the judgment of the circuit court of Winnebago County.

¶ 32 Affirmed.

---

**No. 2-21-0007**

---

| | |
|---|---|
| **Cite as:** | *Powers v. Doll*, 2022 IL App (2d) 210007 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 20-MR-424; the Hon. Donna R. Honzel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Thomas Powers, of Rushville, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (John P. Giliberti, Assistant State's Attorney, of counsel), for appellees. |

---